| 102 | 37 |
| 104 | 719 |
| 104 | 720 |
| 105 | 187 |

| 102 | 37 |
| 109 | 157 |

# Richmond.

## REED & McCORMICK v. GOLD, RECEIVER.

### NOVEMBER 19, 1903.

#### Absent, Buchanan, J.*

1. MOTION FOR JUDGMENT—*Action at Law.*—A motion for a judgment for money under Code, sec. 3211, where the notice takes the place of the writ and the declaration, is an action at law, and the notice need not state that the defendant resides in the county in which the motion is made.

2. FALSE REPRESENTATIONS—*Inducement of Contract—Subsequent to Contract.*—A representation which affords a ground of action for damages, or relief from the obligation of a contract, must be material and untrue, and the party to whom it was made must have relied upon it and been induced by it to enter into the contract. A representation that a company is to have a given capital is not untrue if its charter allows that amount, and a representation made after the contract is completed cannot defeat the obligation of the contract.

3. STOCK SUBSCRIPTIONS—*Statute Regulating Mode of Enforcement—Equity Jurisdiction—Defences at Law.*—The Act of Assembly giving courts of law exclusive jurisdiction of all suits or motions for the recovery of unpaid stock subscriptions, and to determine the validity of such subscriptions (Acts 1897-'8, p. 16), leaves unimpaired the jurisdiction of courts of equity to settle and wind up the affairs of insolvent corporations, to ascertain their debts, and to make assessments on unpaid stock subscriptions. In an action or motion against a stockholder to enforce the collection of such assessment, he cannot assail the validity of a debt established in the chancery suit. His remedy is in the chancery suit where the assessment was made.

4. STOCK SUBSCRIPTIONS—*Suit by Receiver—Defence of Illegal Consideration.*—In an action by a receiver of an insolvent corporation

---

*Judge Buchanan was detained at home by sickness.

against a stockholder, to recover a stock subscription for the bene-
fit of creditors whose debts were contracted on the faith of his
and other subscriptions, where the contract of subscription is
lawful on its face, and the creditors have no knowledge of its
vice, the stockholder cannot defend on the ground that he was
allured into making the subscription by the chance of obtaining one
or more lots in a drawing for distribution of lots of unequal
value. In determining whether or not such contracts shall be
enforced, courts consider whether the good of the public and the
policy of the law will be best subserved, and the making of such
contracts be discouraged, by enforcing the contract, or by refusing
to do so. In the case at bar the contract should be enforced.

5. STOCK SUBSCRIPTIONS—*Statute of Frauds—Verbal Contract—Payments
Deferred Beyond a Year—Enrollment as Stockholder by Com-
pany.*—If a person verbally agrees to take stock in a joint stock
company to be paid for in instalments covering a period of more
than one year, and the company accepts him as a stockholder, and
enters his name on the roll of its stockholders, this is sufficient
to bind him on his contract of subscription. Such action on the
part of the company is all that it is required to do, or can do, to
clothe the party with the character of a stockholder, and all that
is necessary to be done for that purpose.

6. STATUTE OF FRAUDS—*Contracts Performable by Either Party Within
a Year.*—A contract that may be performed on either side within
one year is not within the statute of frauds. It is not necessary
that it should be performable on both sides in order to take it out
of the statute.

7. EVIDENCE—*Depositions—Subsequent Suit Involving Different Is-
sues—Waiver of Objections in First Suit.*—A deposition taken in a
chancery suit cannot be read in a subsequent action at law between
the same parties where the issues are not the same; nor will the
waiver of an objection to the deposition in the chancery suit be-
cause taken before answer filed apply to a subsequent action at
law not then contemplated by the parties.

8. STOCK SUBSCRIPTIONS—*Right to Jury Trial Under Statute—Demurrer
to Evidence.*—The right of a plaintiff to demur to the defendant's
evidence in an action to enforce the collection of a stock subscrip-
tion is not taken away by the Act of Assembly (1897-'8, p. 16),
providing that in such cases the defendant shall be entitled to a
jury where the amount involved exceeds $20. Demurrers to evi-
dence have been, time out of mind, a part of the orderly and
regular procedure in courts of common law, and there is nothing
in the act which discloses any intention on the part of the Legis-
lature to alter or abridge them.

Error to a judgment of the Circuit Court of Clarke county, rendered in a proceeding by motion, wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Affirmed.*

This was a proceeding by motion on the part of a receiver in a chancery suit to recover assessments made by the Chancery Court against the stockholders of a joint-stock company. Numerous defences were set up, and among others that the company was engaged in an illegal enterprise, in that for every sixteen shares of stock purchased the purchaser was to draw a building lot; that these lots were of unequal value and were to be assigned by chance, and hence the business of the company was in part at least a lottery and illegal, and defendants were not bound on their contract of subscription. The other grounds of defence are sufficiently set forth in the opinion of the court.

*Samuel J. C. Moore, F. B. Whiting* and *Conrad Kounslar,* for the plaintiffs in error.

*Barton & Boyd* and *Marshall McCormick,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Gold was appointed receiver in the chancery suit of *Ricamore* v. *Berryville Land & Improvement Company,* and directed to institute "suits at law" against certain delinquent stockholders, or their assignees, named in the report of Commissioner Ward. In obedience to this order, Gold served written notice upon Reed & McCormick that he would, at the October term, 1898, of the Circuit Court of Clarke county, ask for judgment for the sum of $410.08. The defendants appeared and demurred to this notice, first, because by the terms of the decree of Janu-

ary 8, 1898, the receiver was directed to proceed by a "suit at law," and not by a motion, and the court was therefore without jurisdiction to give judgment against the defendants; secondly, because the notice proceeded upon the decree of January 8, 1898, and not upon the original subscription to the stock of the Berryville Land & Improvement Company, in accordance with the Act of the General Assembly approved December 22, 1897 (Acts 1897-'98, p. 16, c. 20); and the third cause of demurrer is that by the act aforesaid the suits therein authorized could be brought only in the county or corporation where the defendants reside, and the notice is defective in that it fails to aver that the defendants reside in the county of Clarke. Numerous pleas were filed and such proceedings had upon them as resulted in a demurrer to the defendants' evidence on the part of the plaintiff, and the judgment of the court upon that demurer for the amount claimed by the plaintiff.

During the progress of the trial exceptions were taken to the rulings of the court, the first of which we shall now proceed to consider.

The demurrer to the notice was properly overruled. A motion for a judgment for money, under the statute, where a notice takes the place of the writ and declaration, is an action at law. *Gordon* v. *Funkhouser,* 100 Va. 675, 42 S. E. 677.

The second ground of error is not well taken. The notice sufficiently describes and sets out the cause of action, whether it be considered as arising under the decree of January 8, 1898, or upon the original subscription to the stock of the company.

The third ground of demurrer is equally without merit, for section 3244 of the Code provides that it shall not be necessary in any action to aver that the cause of action arose or that the matter is within the jurisdiction of the court, and section 3260 that, where the declaration or bill shows on its face proper matter for the jurisdiction of the court, no exception for want of such jurisdiction shall be allowed unless it be taken by plea in abatement.

In plea No. 4 defendants allege that they were induced to make a verbal subscription to the stock of the company by the representation of an authorized agent of the promoters of the company that its capital stock was to be $600,000; and they further aver that a statement contained in the prospectus of said company issued before any assessment was paid, and a statement published in the county newspaper by authority of said company before any payment was made, that the capital stock of $600,000 had all been taken, and that the stock commanded a premium, induced the defendants to pay the first, second, and one-half of the third assessment on said stock; that the capital stock of the company is not, and never has been, $600,000, but only about $400,000, by reason whereof the company was never organized in accordance with the representations made. They further allege that as soon as they learned that the capital stock of $600,000 had not been subscribed they refused to pay any further assessments, and conclude with an offer to surrender the stock and claim damages by reason of the misrepresentation of $2,000, which they offer to set off against plaintiff's demand.

The company was chartered and authorized to do business upon a minimum capital of $100,000 and a maximum of $600,000. It cannot be said, therefore, with reference to the first allegation of the plea, that the representation made by the agent of the company that its capital stock was to be $600,000 was not true.

The second cause of damage, that by the false representation made after their subscription to the stock they had been induced to pay certain assessments, cannot be considered as a just ground of complaint, for, if their subscription was a valid one, in paying the assessment they only did that which they were by law compellable to do; if their contract of subscription was for any reason not binding upon them, they would still be free to make defence to it; and if, in the course of that defence, they were confronted with their payment of an assessment, as an act of

ratification, they could have replied that they ought not to be bound by acquiescence or ratification made in ignorance of the facts and induced by a false representation on the part of the company. A representation which affords a ground of action for damages or relief from the obligation of a contract must be material and untrue, and the party to whom it was made must have relied upon it, and been induced by it to enter into the contract. As to the first representation that the capital was to be $600,000, it cannot be relied upon to defeat the contract, because it was not untrue; and as to the second, it cannot be relied upon to defeat the contract, because it was made after the contract had been entered into, and the facts averred can only be of value to the defendants as an answer to the charge of acquiescence or ratification.

Plea No. 6 avers that among the debts of the Berryville Land & Improvement Company referred to in plaintiff's notice is a claim reported by the commissioner of chancery in the chancery cause of *Ricamore* v. *Berryville Land & Improvement Company* in favor of Annie M. Smith for the sum of $4,723.49; that this debt is for the balance of the price of a tract of land for which an option was obtained from Annie M. Smith by A. Moore, Jr., and which he transferred to the company after its organization; that Annie M. Smith refused to accept the company as the purchaser of the land in lieu of A. Moore, Jr., with whom her contract had been made; and the defendants aver that the company never had any contract with Annie M. Smith for the purchase of the land, and that Annie M. Smith was not at any time a creditor of the company; that the claim audited in her favor is due A. Moore, Jr.; and that he is bound by the representations which he made, as set out in pleas Nos. 2, 3, 4, 7 and 8.

As we understand this plea, its purpose is to show that A. Moore, Jr., and not Annie M. Smith, is the real creditor, in order to introduce defences which would be good as against one

and not as to the other.    The statute, by virtue of which this suit was brought (Acts Assem. 1897-'98, p. 16, c. 20), provides that "all suits or motions for the recovery of unpaid subscriptions to the stock of any joint-stock company shall be brought in the courts of common law of this commonwealth in the county or corporation where the defendant resides, if he be a resident of this State, or in the case of a joint or partnership subscription, then in the county or corporation of this State in which either of the joint subscribers, or any member of the partnership subscribing shall reside; and said courts shall have exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive courts of chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations or to make assessments on unpaid stock subscriptions."

The proper construction of this act leaves courts of chancery with their jurisdiction unimpaired to settle and wind up the affairs of insolvent corporations and to make assessments on unpaid stock subscriptions.    It is still necessary to go into a chancery court to ascertain the assets and indebtedness of the insolvent corporation, and for any balance that may be due after appropriating its property to the payment of its debts to make assessments upon delinquent stockholders for the benefit of unpaid creditors.    When the proportion which each delinquent shareholder is to pay has been ascertained, the receiver is directed to institute suit against him at law, upon his refusal to pay it, and in that suit the stockholder may make any defence which involves the validity of his subscription; but we do not understand that it authorizes the court of law to rehear and to review matters which are necessarily adjudicated in the court of chancery.    It would lead to intolerable confusion, and be a denial of all effectual remedy, if, after a court of chancery had taken an account of debts, appropriated the property of the corporation to their payment, ascertained certain balances to be

due, and apportioned those balances among the stockholders ratably, in the suit to collect the assessment, each stockholder could introduce evidence to show that this debt or that debt was not due, or that payment had been made upon it, or any other defence existed against it. If the defence set up in the plea could be made, it would seem equally proper to question the price at which property of the corporation had been sold, or that debts due to it might have been but had not been collected, resulting in inextricable confusion. The language of the statute is that the courts of law shall have "exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions"; jurisdiction, that is, to inquire whether or not any advantage has been taken of the stockholder, any fraud or misrepresentation made which induced him to subscribe, or any defence which he might have to show that the subscription by which it was sought to charge him was not binding in law. The act leaves the jurisdiction with the chancery court to "settle and wind up the affairs of insolvent corporations," and as a necessary incident thereto expressly reserves to the chancery court power to make "assessments upon unpaid stock subscriptions"; not, we presume, to do a vain and nugatory thing, which each person affected by it would be authorized to set at naught, but an assessment binding upon the stockholder, subject to his right to make any lawful defence to the contract of subscription. Of course, until a final decree, it would always be competent for a stockholder to show in the chancery suit in accordance with equity practice, that a debt sought to be collected was not due in whole or in part, or any other fact which should diminish the rate of assessment. It is true that the act in question declares that suits brought under it shall be governed in all respects by its provisions, but still the question remains, what is the legal effect of the provisions of the act? and, applying the well-known principle of construction, that statutes are not presumed to make any alteration in the common law further or

otherwise than the act does expressly declare, we are satisfied with the interpretation we have placed upon it.    Broom's Legal Maxims (7th Ed.) 32, and authorities cited; *Millhiser* v. *Gallego Mills Co.,* 101 Va. 579, 44 S. E., at page 766.

What we have said in regard to the pleas Nos. 4 and 6 seems sufficient to dispose of pleas Nos. 8, 10, 13 and 14.

Another error assigned is the "action of the court below in not maintaining the defence that the contract was contrary to public policy because of the proposed distribution of lots by a drawing to be conducted by the company."    This subject was fully considered by this court in *Cardwell* v. *Kelly,* 95 Va. 570, 28 S. E. 953, 40 L. R. A. 240, and upon the authorities cited and the reason given in that case we are of opinion that this assignment of error is not well taken.

Another error assigned is that the alleged subscription to the stock of the Berryville Land & Improvement Company was not in writing and signed by Reed & McCormick or their agent, and that this action cannot be maintained to charge them upon a verbal promise by virtue of that clause of section 2840 of the Code, which provides that no action shall be brought "upon any agreement that is not to be performed within a year," unless some memorandum or note thereof be in writing, and signed by the party to be charged thereby or his agent.    Plaintiff in error subscribed for 80 shares of stock of the Berryville Land & Improvement Company, 10 *per cent.* thereof to be paid within 15 days from the time of subscription, and the residue at the call of the Board of Directors, provided that no assessment should exceed 10 *per cent.* of the par value, and that no two assessments should be at shorter intervals than 60 days.    It appears, therefore, that the whole of the subscription could not be called for within one year, and plaintiff in error insists that this is an executory contract, which by its terms could not be wholly performed within a year, and is, therefore, within the operation of the statute just quoted, and that an action thereupon cannot

be maintained. Defendant in error insists, first, that the contract was in writing, within the meaning of the statute; and, secondly, that by the contract there was an immediate sale of a certain number of shares of stock by the company to Reed & McCormick, to be paid for by them in instalments, some of which were payable within and the remainder beyond a year; that, while the certificates were not in fact delivered within the year, they might have been so delivered, but that the ownership of the stock passed at once, there being nothing in the contract which restricted its performance on the part of the company to any particular time; and that this is so, although under section 1132 of the Code the company could not have been compelled to deliver to the subscriber a certificate for the shares so taken until the amount of the subscription was fully paid. In other words, the contention of the company is that the contract upon its part was that Reed & McCormick should be entitled to 80 shares of the capital stock of the company, and that upon their subscription, whether that subscription was verbal or written, they became shareholders in the company to the extent of that subscription, clothed with all the rights, interests, and privileges of shareholders, and subject to all the duties and liabilities of shareholders.

In Cook on Corporations (4th Ed.) Vol. 1, at section 13, it is said: "A certificate of stock is not necessary to the complete ownership of the stock, nor is payment of the subscription necessary thereto"—accepting as authority the decision of the Court of Appeals of New York in *Wheeler* v. *Millar,* 90 N. Y. 353, where it was held by a unanimous court that "a share of stock, like other property, may be sold on credit. The title may pass, the right become vested, if such be the intention and contract of the parties, although payment is deferred, and the usual written evidence of title is absent. Whatever may be said of a case where no fact is present as the foundation of an inference that title has passed, except the bare fact of a subscription, it is en-

tirely reasonable that where, in addition, the corporation has explicitly recognized the alleged stockholder as such, and the latter has acted in that capacity, such facts should be deemed sufficient to justify a conclusion of ownership, and make the subscriber a stockholder."

This seems to be conformable to reason and in the ordinary course of business with respect to sales of personal property. When the contract is consummated the title passes, although the sale be upon credit. In this case it is not denied that several assessments upon that stock were paid by the plaintiff in error, and the evidence shows that one of the parties was present at a stockholders' meeting, though he denies having participated in the transaction of business. We may safely say that the company had done all that it was required to do when it entered the names of Reed & McCormick upon the roll of its stockholders as subscribers for 80 shares of its capital stock. That was all that the company was required to do, all that it could do, to clothe them with the character of stockholders, and all that was necessary to be done for that purpose. Upon the full payment by them of the amount due, they would have been entitled, under section 1132 of the Code, to a certificate as therein provided.

It is said in Browne on the Statute of Frauds (section 286) that the first intimation of the doctrine that if all that is to be done on one side is to be done within a year from the making of the contract, the statute does not apply to it, and that an action would lie for the nonperformance of the other stipulations, is found in *Boydell* v. *Drummond,* 11 East, 142, where it was insisted by counsel for plaintiff that by accepting the earlier numbers of the publication, which was the subject of the contract, the defendant had taken the case out of the statute of frauds, by part execution, and compared it to selling and delivering goods on 13 months' credit, without writing, in which case, if no evidence could be given of the terms of payment, as part of the contract, the vendor would not be bound by the stipulated

price, and the jury could only give a verdict for the value of the goods; but Lord Ellenborough said that there the delivery of the goods would be a complete execution on one part within the year, and the question of consideration only would be reserved for the future. And afterwards, in *Bracegirdle* v. *Heald,* 1 Barn. & Ald. 727, which was a case of a contract for a year's service, to commence at a future day, and therefore clearly within the statute, Mr. Justice Abbot took occasion to remark that when all that was to be done on one side was to be done within the year, as in the case of goods to be delivered in 6 months and paid for in 18 months, the contract would not be within the statute.

The doctrine, however, was not directly decided until the case of *Donellan* v. *Read,* 3 Barn. & Ald. 899, where Justice Littledale said: "We think that as the contract was entirely executed on one side within a year, and as it was the intention of the parties, founded on a reasonable expectation, that it should be so, the statute of frauds does not extend to such a case."

This case was followed in the more recent case of *Cherry* v. *Heming,* 4 Exch. 631, in which Parke, B., said: "The rule must be discharged. With respect to the question whether this is an instrument within the statute of frauds, I think that *Donellan* v. *Read* is an answer, and, in my opinion, that case was rightly decided. The question turns upon the construction of the words 'not to be performed,' and in *Donellan* v. *Read* the court considered that those words meant not to be performed on either side, and did not include cases where the contract was performed on the one side." That was certainly in accordance with the opinion expressed by Lord Tenterden in *Bracegirdle* v. *Heald.* If *Donellan* v. *Read* had been simply a decision on a doubtful point, we ought to be bound by it unless manifestly wrong, and the learned observations of Mr. Smith are not sufficient to induce me to say that it was wrongly decided. The case of *Peter* v. *Compton,* which he relies on, does not support

his view. All that can be said of that case is that there being two answers to the statute of frauds, Lord Holt gives one which is satisfactory, namely, that the agreement might have been performed within the year.

In support of this view of the law, the following cases may be cited:

*Holbrook* v. *Armstrong,* 10 Me. 31, where it is held that the contract was not within the statute of frauds, though not in writing, and in part not to be performed within a year, the statute not applying to cases of sale where there is part execution of the contract within the year by delivery of the goods, though the price is stipulated to be paid at a period beyond a year.

In *Rake's Adm'r* v. *Pope,* 7 Ala. 161, it was held the statute was never intended to embrace a contract wholly executed on one side, where nothing was to be done on the other but to pay the money stipulated as an equivalent. *McClellan* v. *Sanford,* 26 Wis. 595; *Winters* v. *Cherry,* 78 Mo. 344; *Curtis* v. *Sage,* 35 Ill. 22.

Speaking of the rule under consideration, Clark on Contracts, at page 112, says: "It is established in England and in most of our States that an agreement does not fall within the statute if that which one of the parties is to do is all to be performed within a year; in other words, the agreement must contemplate nonperformance by both parties within the year." And in Chitty on Contracts (11 Am. Ed.) Vol. 1, at page 102, the author states: "It may also now be regarded as settled that the statute does not apply, except to contracts which are not to be performed on either side within the year. Thus, a parol contract for the sale of goods which are to be delivered, and which the parties reasonably expect will be delivered, within a year, though the price may be paid after that period, is not within the statute, because, in such a case, all that is to be performed on

one side, namely, the delivery of the goods, is to be done within a year."

It cannot be denied that there is diversity of opinion upon this subject, and that courts of the highest respectability maintain that *Donellan* v. *Read* and the cases which follow it are not law. This court, however, in *Seddon* v. *Rosenbaum,* 85 Va. 932, 9 S. E. 326, 3 L. R. A. 337, approved *Donellan* v. *Read,* and that decision was followed in *Thomas* v. *Armstrong,* 86 Va. 323, 10 S. E. 6, 5 L. R. A. 529. As the construction of the statute for which defendant in error contends is supported by the English courts, by a great array of authorities in the United States, and has been accepted and approved by this court, we are of opinion that the Circuit Court committed no error in applying it to the facts in this case.

The deposition of John O. Crown, offered in evidence by defendants, was objected to by the plaintiff, and excluded by the court, and this constitutes another assignment of error. The witness Crown was dead when his deposition was offered. It had been taken and read in the chancery cause more than a year before the answer of Reed & McCormick was filed in that suit. The plaintiff, by counsel, waived the objection that the answer had not been filed when the deposition was taken, and that difficulty is at an end. The fact remains, however, that the issues in the chancery cause in which the deposition was taken are not the same as the issues in the action at law in which it was offered. Complete mutuality or identity of parties is not necessary, "it being sufficient if the point or matters in issue were the same in both cases, and the party against whom the evidence is offered, or those under whom he claims, had full power of cross-examination." 3 Greenleaf on Evidence (15th Ed.), sec. 341. The reason for this is plain. The proof must respond to the allegation and plea, and, if a witness in his deposition testifies with respect to a matter not in issue, his testimony would be immaterial, and might with safety and propriety be passed by without

challenge or cross-examination, and in such a case to permit it to be read in another suit upon a different state of the pleadings would operate a surprise and an injustice.

The waiver doubtless had reference only to the chancery suit, and was designed to obviate the objection that the deposition had been prematurely taken, the parties in whose interest it was to be read not having answered or presented any issue, and in this point of view, also, to hold that the waiver had that effect to debar the other side from making any objection to the reading of the deposition in a common-law suit brought years afterwards, would be to give it an effect not within the contemplation of the parties at the time it was made.

Plaintiff in error claims that plaintiff had no right to demur to the evidence; that the statute by virtue of which this suit was brought expressly provides that defendant shall be entitled to a jury where the amount involved exceeds $20, and that suits brought under it "shall be governed in all respects by the provisions of this act." While the statute invoked confers exclusive jurisdiction upon courts of law in the trial of cases such as these, it does not change or affect the rules of practice in those courts. Demurrers to evidence have been, time out of mind, a part of the orderly and regular procedure in courts of common law, and there is nothing in the act which discloses any intention upon the part of the Legislature to alter or abridge them. If the language, that the defendant shall be entitled to "a trial by jury," as used in this statute, were sufficient in cases brought under it to take away the right to demur to the evidence, it would seem that the Bill of Rights would long ago have extirpated the practice; for it declares that in suits between man and man a trial by jury is preferable to any other and ought to be held sacred. The right to demur to the evidence has come down to us as part of common-law procedure along with the right of trial by jury; indeed, if there were no trial by jury, there would be no demurrers to evidence. Where the Legislature has de-

signed to prohibit demurrers to evidence, it has done so in explicit terms, and section 2897 of the Code provides that, in an action for insulting words, "no demurrer shall preclude the jury from passing thereon."

That the court rendered judgment upon the demurrer to the evidence in favor of the defendant in error is also assigned as error.    We have considered at length the questions of law arising upon the record, and do not care to prolong this opinion by an unprofitable discussion of facts.    We are mindful of the rule invoked applicable to demurrers to evidence, and we are of opinion that so considered the evidence was insufficient to support a verdict for plaintiffs in error, and that upon the whole case, there was no error in the judgment of the Circuit Court, which is affirmed.

*Affirmed.*