# Richmond.

## Elliott v. Ashby, Receiver.

### December 14, 1905.

1. Appeal and Error—*Amount in Controversy—Judgment for Quota of Stock.*—Where the validity of a stock subscription for more than $300 is drawn in question by a judgment for an assessment upon said stock for less than $300, this court has jurisdiction of a' writ of error to said judgment.

2. Statutes—*Construction—Re-enactment.*—Where the language of a constitutional provision and of a statute has been construed by this court and since that time there has been a general revision of the laws and a new constitution has been adopted, each of which retains the language construed, such construction will be taken to have been approved.

3. Stock Subscriptions—*Action by Receiver—Defenses—Code, Sec. 1103a.*—In an action by a receiver, under Code, (1904), Sec. 1103a, to recover an unpaid stock subscription, the defendant is not confined to please by way of confession and avoidance, but may show that he never subscribed to or became a stockholder in the company. The object of the statute was to take away from courts of chancery the power to fix the liability of the stockholder, and to transfer all questions affecting the validity of the subscription to the courts of common law, at the same time leaving the courts of chancery the ascertainment of the indebtedness of the company, the amount necessary for its liquidation, the percentage to be paid by each stockholder, and the appointment of a receiver to collect the assessments.

4. Stock Subscriptions—*Release of Subscription—How Proved—Case at Bar.*—While a stock subscription in a joint stock company can only be released by the stockholders, or by the Board of Directors duly authorized by them, yet such release can be proved not only by the records of the company, but also by other evidence showing that such subscription was in fact not regarded by the company as

binding on it, and that the subscriber was not regarded by himself or by the company as a stockholder thereof. In the case at bar, the evidence was sufficient to warrant a jury in finding that the defendant's subscription was not regarded by himself or the company as binding upon him, and the trial court should have so decided on the demurrer to the evidence by the plaintiff.

Error to a judgment of the Corporation Court of the city of Newport News, upon a motion for a judgment for money. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*A. C. Garrett,* for the plaintiff in error.

*Ashby & Read,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

A chancery suit was brought by Phipps against the Schulz Brewing Company and others, an insolvent corporation, for the payment of its debts, which resulted in an assessment of fourteen *per cent.* upon the stock subscribed, and C. A. Ashby was appointed a receiver, with direction to bring an action at law in his own name against the several subscribers for that amount.

Acting under this order, the receiver gave notice of a motion for judgment against J. W. Elliott, which afterwards came on for trial in the Corporation Court of the city of Newport News, and a judgment was rendered against the defendant for $140. To this judgment a writ of error was awarded the defendant.

We are met by a motion to dismiss the writ of error for want of jurisdiction; defendant in error relying upon the proposition, which as a general rule is true, that the real matter in controversy is that for which the suit is brought and judgment is rendered, and not that which may or may not come in

question—in other words, that the sole test of jurisdiction is the amount which the defendant may pay and thereby discharge himself, and if that sum be less than the minimum jurisdiction of the court, the appeal or writ of error should be dismissed.

On behalf of the plaintiff in error it is urged, that while the judgment before us is for $140, which could be satisfied by the payment of that sum, this suit involves the liability of plaintiff in error (defendant in the court below) upon a stock subscription amounting in the aggregate to $1,000, which was the real subject in controversy.

It is needless to consider what our view would be of the law, were the subject an open one in this court. In the case of *Stuart* v. *Valley Railroad Co.,* 32 Gratt. 146, it was held, that though the judgment against S. for the $300, and interest was less than $500, yet the subject in controversy was the validity of the subscription for five shares of stock (of the par value of $500), and the Court of Appeals had jurisdiction to hear the case. That case was decided at the September term, 1879, Judge Moncure delivering the opinion.

Since that time the laws of the State have been codified; and two of the judges who were then upon the court were upon the commission charged with that duty, and the statute upon the subject was re-enacted *in totidem verbis.* More than that, since that time a new Constitution has been adopted, which has retained, so far as it affects this case, the language of the preceding Constitution, which was the law when *Stuart* v. *Railroad Co.* was decided. The jurisdictional sum, it is true, was diminished from $500 to $300, but in no other respect was it changed.

We have, then, a judgment of this court, which has remained unquestioned as the law of this State for more than a quarter of a century, construing a provision of the Constitution and a statute passed in pursuance thereof, and the construction placed upon them has not only been unchallenged, but must be taken as having been approved by the adoption of the identical language in the Code and the Constitution.

Defendant in error also insists that plaintiff in error could not question in the court of law the fact that he had subscribed to and become a stockholder in the Schulz Brewing Company; but that he would be confined to defenses in the nature of confession and avoidance; that is to say, which admit that he had subscribed as a stockholder, but that by reason of fraud or misrepresentation he should not be bound by his contract of subscription; and in support of this proposition cites *Reed* v. *Gold,* 102 Va. 37, 45 S. E. 868, where it is said: "When the proportion which each delinquent shareholder is to pay has been ascertained, the receiver is directed to institute suit against him at law, upon his refusal to pay it, and in that suit the stockholder may make any defense which involves the validity of his subscription; but we do not understand that it authorizes the court of law to rehear and to review matters which are necessarily adjudicated in the court of chancery."

The statute which was there being construed now appears as section 1103a of Va. Code, 1904.

"All suits or motions for the recovery of unpaid subscriptions to the stock of any joint stock company shall be brought in the courts of common law of this Commonwealth in the county or corporation where the defendant resides, if he be a resident of this State, or in the case of a joint or partnership subscription then in the county or corporation in this State in which either of the joint subscribers, or any member of the partnership subscribing shall reside; and said courts shall have exclusive jurisdiction to hear and determine all questions involving the validity of such subscriptions, but nothing herein contained shall be construed to deprive courts of chancery of their jurisdiction to settle and wind up the affairs of insolvent corporations, or to make assessments on unpaid stock subscriptions."

That section, on its face, applies to questions which are to be heard and determined in the chancery courts. For instance, the Chancery Court ascertains the indebtedness of the corporation, the amount necessary for its liquidation, the percentage

which is to be paid by each stockholder, and appoints a receiver to enforce its decree. But the statute in unmistakable terms declares, that the courts of law shall have jurisdiction to hear and determine all questions involving the validity of such subscriptions; and the quotation from *Reed* v. *Gold, supra,* conforms strictly to the terms of the statute.

As a matter of course, all who appear to be stockholders must be brought before the Chancery Court, and it proceeds upon the assumption that all who appear to have subscribed to stock are bound for its payment; otherwise, it would be impossible for it to ascertain what amount should be collected from each; but the object of the statute was to take away from courts of chancery the power to fix the liability of the stockholder, and to transfer all questions affecting the validity of the subscription for inquiry and adjudication in the courts of common law.

Upon the trial, after the plaintiff had introduced evidence to prove the subscription list upon which the company was organized, and that plaintiff in error had signed his name thereto, subscribing to ten shares of stock, at the par value of $100 each, and that the company had been duly organized, its indebtedness, the institution of the chancery suit to wind up its affairs, the appointment of a receiver with direction to collect fourteen *per cent.* of the  par value of the stock of each subscriber—in other words, had made out a *prima facie* case—the defendant introduced a witness who testified that he was a stockholder in the company; that together with one Newkirch they called upon the defendant Elliott, explained to him the plans of the company and induced him to subscribe for ten shares of the stock; that when the charter was obtained Newkirch was named as secretary and treasurer; that within from three to five days after his subscription, and at least six days before the charter of the company was obtained, Elliott 'phoned to him that he had decided to take his name off the list; that he told Mr. Elliott to write him a letter to that effect, which he said he would do, and did do, which letter is as follows:

"J. W. Nollison, Esq.,
                    "City.

"Dear Sir:

  "A few days since, upon your solicitation, I subscribed ten shares to the capital stock of a company to be organized and chartered, and to be known as the Leon Schulz Brewing Company. For certain reasons, which appear to my mind good and sufficient, I now desire to rescind my action in this matter, and request you to erase my name from said subscription papers, and fully cancel my said subscription.

                    "Yours truly,

                              "J. W. ELLIOTT."

  Witness further testified that he never saw the subscription list after that time; that if he had gotten hold of it he would have erased Mr. Elliott's name therefrom, as he felt in honor bound so to do; that he asked Mr. Newkirch to erase Mr. Elliott's name, and Mr. Newkirch promised to do so; that he did not know whether the same had been done or not until he saw the subscription list at the time of the chancery suit; that as far as he knew Mr. Elliott was never considered by the stockholders of the company as a subscriber; and then, being asked by counsel for defendant what he meant by "as far as he knew," said, "well, that the secretary was notified to strike his name off;" that he understood that Mr. Elliott was not regarded as a stockholder, and that Mr. Elliott did not regard himself as a stockholder; that he did not know whether the charter was granted upon the subscription list in evidence or not.

  It does not appear that Mr. Elliott ever acted as a stockholder, or participated in any way in the affairs of the company. There was evidence of other stockholders that they understood that Mr. Elliott was a stockholder, and regarded him as such.

This being the testimony, the defendant in error (plaintiff in the court below) demurred to the evidence, and the jury found the following verdict: "We the jury find for the defendant subject to the court's opinion upon the demurrer to the evidence, and if upon such demurrer to the evidence the court finds for the plaintiff, then we find for the plaintiff, and assess his damages at $140.00." Upon this verdict the court rendered a judgment in favor of the plaintiff.

It is unnecessary to discuss the statute which controls in such cases, as it has been so frequently discussed and enforced as to be familiar to all.

In *Stuart* v. *Valley Railroad Co., supra,* it is held, that though a contract of subscription to the stock of a company can be released only by the stockholders, or by the board of directors duly authorized to do so by the stockholders, "yet such release can be proved not only by the records of the company, but also by other evidence showing that such subscription was in fact not regarded by the company as binding upon it, and that the subscriber was not regarded by himself or by the company as a stockholder thereof."

Tested by this principle, we are of opinion that the judgment upon the demurrer should have been for the plaintiff in error. The testimony of Rollison was sufficient to warrant the jury in finding that Mr. Elliott's subscription was not regarded either by himself or by the company as binding upon him.

The judgment of the Corporation Court must be reversed, and this court will enter such judgment as it should have rendered.

*Reversed.*