## GEORGIA LIFE INSURANCE COMPANY *v.* BELL.

1. A charter was granted by the secretary of State, incorporating an insurance company. The amount of capital stock authorized to be issued was $1,000,000, divided into 10,000 shares of the par value of $100 each. One thousand, one hundred and twenty-nine shares were subscribed and fully paid for. At a meeting of the stockholders a resolution was adopted and reduced to writing and signed by all the parties, as follows: "We,' the present stockholders of the Georgia Life Insurance Company, hereby subscribe for the remaining shares of the 10,000 proposed; namely, 8871 *at par*. We agree that said stock be sold from time to time at such prices as the directors of said company may see fit. The net proceeds arising from the sale of said stock to be the property of said Georgia Life Insurance Company, and to be credited to our stock account." Subsequently the directors, in pursuance of this contract, sold 3880 shares of the stock referred to therein at different prices above par, and turned the proceeds over to the corporation. *Held*, that, under the circumstances enumerated, the contract was binding both upon the corporation and the subscribers to the stock.

   (*a*) The stock and the subscribers thereto acquired such status in connection with the corporation as authorized the subscribers to vote the stock at a stockholders' meeting on the question of amending the charter of the corporation under the Civil Code, § 2201, although the stock was not fully paid for and no formal certificate issued.

2. A by-law of the corporation which declares, "Each stockholder shall be entitled at any stockholders' meeting to one vote for each share of stock which stands in his name upon the stock books of the company. Votes may be cast in person, or by written proxy. Blank proxies shall be, by the secretary-treasurer, mailed to each stockholder at least thirty days before the annual or other stockholders' meeting. The stock books shall be closed for fifteen days before the annual election, and all proxies must be registered with the president at least ten days before the meeting for which they are given. No one can cast a vote as proxy unless he is a stockholder of the company. All proxies held shall be voted as directed by the principal; and in the absence of any such instructions, they shall be voted as directed by the majority of the board of directors," is not to be construed as restricting the voting power of capital stock for which no formal stock certificate has been issued, to the extent that it can not be voted on a fundamental change in the charter.

3. It was erroneous to grant an interlocutory injunction in this case.

MARCH 11, 1914.

Injunction. Before Judge Mathews. Bibb superior court. October 13, 1913.

In April, 1909, a certificate of charter was issued by the secretary of State, incorporating the Georgia Life Insurance Company. The capital stock authorized to be issued was $1,000,000, divided into 10,000 shares of the par value of $100 each. The corporation was authorized to carry on a general life and accident in-

surance business. One thousand one hundred and twenty-nine shares of the stock were subscribed and paid for by twenty-one persons, severally, in different amounts. The company desired to engage in more classes of insurance than one, and to that end it was decided to sell more of the capital stock. Accordingly, in May, 1909, these organizing stockholders held a meeting and passed a resolution which was reduced to writing and signed by them, as follows: "We, the present stockholders of the Georgia Life Insurance Company, hereby subscribe for the remaining shares of the 10,000 proposed; namely, 8871 *at par*. We agree that said stock be sold from time to time at such prices as the directors of said company may see fit. The net proceeds arising from the sale of said stock to be the property of said Georgia Life Insurance Company, and to be credited to our stock account." The organization completed, the corporation was launched into business. Of the stock subscribed as last above mentioned, the directors from time to time sold at prices above par, and received pay for, 3880 shares, which, added to the 1,129 shares previously subscribed and paid for by the organizing stockholders, made the total number of shares which had been paid for aggregate 5009. This left 4,991 shares which had been subscribed for as set forth in the resolution mentioned above, but for which payment was never made nor any call made therefor. In 1913 the directors sent out notices of a meeting of the stockholders, called for the purpose, among other things, of considering whether an application should be made to the secretary of State to amend the charter "by substituting the word 'Casualty' for 'Life' as it appears in the company's name, and by reducing its capital stock to $300,000, passing the difference of $200,000 to surplus." Thomas L. Bell, James M. Holloway, and James R. Sanders. had become purchasers of some of the stock subscribed by the twenty-one organizing stockholders, as by the terms of the written contract above mentioned. They instituted an action against the corporation to enjoin all action for such amendment of the charter. On the case as presented by the pleadings and evidence, the judge, on June 28, 1913, granted an order, which, after reciting his reasons therefor, concluded thus: "the defendant is enjoined from applying for an amendment to its charter for the purpose of reducing its capital stock until, at a stockholders' meeting as provided in § 2397 of the Code, such decrease in its capital stock has

been authorized by a majority of its entire capital stock of 10,000 shares voting in favor of such decrease; and said company is enjoined from taking further steps under any proceeding for the purpose of amending the charter of said company for the meeting on May 13, 1913, as set out in paragraph 15 of the petition in this case." On August 12, 1913, the corporation sent out notices of a stockholders' meeting to be held September 13, 1913, to consider the advisability of amending the charter of the company "so as to change the amount of its capital stock and change the face value of each share of its capital stock for the purpose of increasing the company's surplus, and also for the purpose of deciding whether the name of said company shall be changed from the Georgia Life Insurance Company to the Georgia Casualty Company." The notice recited that "This action of the Board of Directors is taken in consequence of the recent decision of the Judge of the Superior Court of Bibb County on the subject, and for the purpose of carrying out the policies heretofore recommended to the shareholders." In pursuance of these notices a meeting was held, and a resolution was declared adopted to amend the charter in effect as indicated above, and duly entered on the minutes. At the stockholders' meeting it was declared that 6382 1/3 shares of the capital stock were voted in favor of amending the charter; and none appear to have been voted against it. The last mentioned shares included 3055 shares of the 5009 shares of the fully paid stock, and 3327 1/3 shares which were part of the 4991 shares which had been subscribed by the twenty-one organizing stockholders but had never been paid for. One of the by-laws of the corporation provided: "Each stockholder shall be entitled at any stockholders' meeting to one vote for each share of stock which stands in his name upon the books of the company. Votes may be cast in person, or by written proxy. Blank proxies shall be, by the secretary-treasurer, mailed to each stockholder at least thirty days before the annual or other stockholders' meeting. The stock books shall be closed for fifteen days before the annual election, and all proxies must be registered with the president at least ten days before the meeting for which they are given. No one can cast a vote as proxy unless he is a stockholder of the company. All proxies held shall be voted as directed by the principal; and in the absence of any such instructions, they shall be voted as directed by the majority of the board of directors."

On October 6, 1913, the plaintiffs amended their petition, alleging the action of the stockholders as set forth above, and seeking to enjoin the corporation from applying for the amendment to the charter. The basis of the complaint was that the stock which had been subscribed but not paid for by the organizing stockholders, as above mentioned, was not authorized to be voted at the stockholders' meeting, and that, eliminating the shares of this class of stock which were voted in favor of amending the charter, the remaining votes cast would not constitute a majority of the 10,000 shares of the capital stock of the corporation. On the interlocutory hearing the judge passed an order which declared, "that the defendant company . . . is enjoined from making application for a change in the amount of its capital stock, the par value of its shares, or in its corporate name, until at a meeting of stockholders, duly held in manner provided by law, a majority of its stock duly subscribed, paid for, and owned by the stockholders voting said stock shall be voted in favor of making such application, such majority not being less than a majority of ten thousand shares constituting the total capital stock of the defendant corporation." To this order the defendant company excepted, alleging that the court erred in holding that the stock which had been regularly subscribed but not paid for could not be voted at the stockholders' meeting on the resolution to amend the charter; and that, the resolution having been regularly adopted by the stockholders, and all requirements of the law having been fully complied with, defendant was authorized to apply for the proposed amendment, and should not have been enjoined by the court.

*Robert P. Jones, Miller & Jones,* and *Alex. C. King,* for plaintiff in error.

*W. P. Wallis* and *John R. L. Smith,* contra.

ATKINSON, J. 1. The proposed amendment was sought under the provisions of the general law as embodied in the Civil Code, § 2201. It is there declared, "Any banking, railroad, insurance, express, telegraph, canal, or navigation company in this State, whether incorporated by special act of the General Assembly or by the secretary of State under the general law, may have its corporate name, or its principal office, or the face value of each share of its capital stock, or the number of its board of directors, or the amount of its capital stock changed in the following manner, to wit: The

company desiring to have its name, or its principal office, or the face value of each share of its capital stock, or the number of its board of ·directors, or the amount of its capital stock changed shall file in the office of the secretary of State a petition signed with the. corporate name, stating the name and character of the corporation, the date of its original charter and all amendments thereto, that it desires an amendment to its charter, changing its corporate name, or its principal office, or the face value of each share of its capital stock, or the number of its board of directors, or the amount of its capital stock, any or all, as the case may be, and paying to the secretary of State a fee of $25.00 to be covered by him into the treasury of the State; and also file with such petition a certified abstract from the minutes of the board of directors, showing that the application for the proposed amendment has been authorized by the vote of a majority in amount of the entire capital stock at a meeting of the stockholders called for the purpose, by resolution of the board of directors, notice of which meeting shall be mailed to each stockholder, or, in case of death, to his legal representatives or heirs at law, addressed to his last known residence, at least ten days previously to the day of said meeting: Provided, however, if the petition is to change the principal office of any of such companies, then the certified abstract from the minutes shall show that the amendment was authorized by the unanimous vote of the stockholders present at the meeting held for such purpose. Affidavit made and signed in due form of law by the president or sec-·retary shall be attached to said petition, showing that it has ·been published once a week for four weeks in that newspaper in which is published the sheriff's sales of the county in which the principal office of said corporation is located." No attack is made on the validity of the organization of the corporation. Shortly after the issuance of the charter, the owners of 1129 shares of the stock, who constituted all of the stockholders at that time, at a meeting of the stockholders of the corporation, unanimously passed a resolution which was reduced to writing and signed by them, as follows: "We, the present stockholders of the Georgia Life Insurance Company, hereby subscribe for the remaining shares of the 10,000 proposed; namely, 8871 *at par*. We agree that said stock be sold from time to time at such prices as the directors of said company may see fit. The net proceeds arising from the sale of said stock to be the

property of said Georgia Life Insurance Company, and to be credited to our stock account." This was spread upon the minutes of the corporation; and subsequently, in pursuance of the contract, the directors sold 3880 shares of the stock thus subscribed above par, and placed the net proceeds in the treasury of the corporation. Under these circumstances the contract was binding upon the corporation, and also upon the subscribers, and gave the stock a status as such and the subscribers a standing as stockholders in the affairs of the corporation. If the stock was not paid for in cash, the company held the written agreement of the subscriber to pay for it at its par value, and the agreement could have been enforced. The subscribers in the instant case were recognized by the corporation as the owners of the stock so subscribed, because they sold a very large portion of that stock and received a price in excess of the par value, which they applied to the corporation, by virtue of the contract to treat the subscriber as the owner of stock, and their right to accept an increased price upon the faith of the contract therefor. Whatever may be said of a case where no other fact is presented to support the proposition that the subscriber is a stockholder than the bare fact of subscription, yet where it appears that the corporation dealt with the subscriber as the owner of the stock and converted into the corporate treasury a large sum, based upon a contract made with him as the owner of that stock, for all practical purposes, relatively to other stockholders, they will be treated as standing upon an equal footing with reference to the conduct and management of the corporate affairs. 1 Cook on Corp. § 13; Reed v. Gold, 102 Va. 37 (45 S. E. 868); Cotter v. Butte & Ruby Valley Smelting Co., 31 Mont. 129 (77 Pac. 509); South Dakota v. North Carolina, 192 U. S. 286 (24 Sup. Ct. 269, 48 L. ed. 448); Spear v. Crawford, 14 Wendell, 20 (28 Am. D. 513).

It is declared in the Civil Code, § 2398, that the stock in insurance companies shall be deemed personal, and be transferable in the manner prescribed by the by-laws of the company, but that no share shall be transferable until all previous calls thereon shall have been paid in. This distinctly recognizes that there may be ownership of capital stock by the subscriber before he has paid his subscription therefor. From what has been said it clearly appears that the subscribed stock, mentioned above, should be held capital stock of the corporation, within the meaning of the Civil Code,

§ 2201, supra, and that the subscribers are to be regarded as the owners thereof. Being such, the statute (Civil Code, § 2201) is authority for the right of such stockholders to vote the stock upon the question of amending the charter. There is no statute which disqualifies stock from voting on account of non-payment of subscriptions thereto, nor because a formal certificate has not been issued therefor.

2. It was contended that the corporation's by-laws limited the voting of stock to that which appeared upon the stock books, and to which certificates had been formally issued. The by-law in question is set forth in the second headnote. This by-law was designed to safeguard the voting of stock which had been formally issued and entered on the minutes. For this purpose it was a proper regulation, as it tended to secure the rights of the real owner of the stock. But it did not purport, and was not intended, to prevent the owner of stock, to whom a formal certificate had not been issued, from voting his stock on the question of amending the charter so as to bring about a fundamental change. To give it such a construction would make the by-law conflict with the statute (Civil Code, § 2201) which contemplates the vote of all the stock.

3. There was no issue of fact involved, but the questions were purely of law, and are controlled by the principles announced in the preceding divisions. The judge committed error, therefore, in enjoining the defendant company from making application for the amendment to its charter.

*Judgment reversed. All the Justices concur.*

LUMPKIN, J., concurring specially. I concur in the judgment, but do not concur in all that is said in the opinion of the majority of the court. The plaintiffs are purchasers of stock which was issued and sold by virtue of the agreement unanimously entered into by the original stockholders subscribing for the balance of the authorized capital stock, and providing for its sale by the directors. The status of the plaintiffs as stockholders, therefore, depends upon this agreement, and they are in no position to attack its validity. In this case the plaintiffs invoked the action of a court of competent jurisdiction, and obtained an injunction against an application to amend the charter, which showed on its face that it was based on the ground that, in determining what was a majority of

the votes necessary for that purpose, all of the subscribed capital, as well as that represented by stock certificates, must be included in the computation. This necessarily involved an adjudication that the subscribers were stockholders within the meaning of the statute and were entitled to vote, since they could not be stockholders for the purpose of determining the number of votes, and not stockholders with reference to the right to vote. Nevertheless, when a second meeting was held and the entire voting strength was computed on the basis which the order of the court dealt with as correct, and the subscribers were treated as stockholders in the purview of the statute, the same plaintiffs then set up that all the subscribers were not entitled to vote, but only those holding stock certificates registered on the books of the company. Without regard to the proper construction of the by-law, these plaintiffs can not take two inconsistent positions; in one obtaining a judgment which treated the subscribers as stockholders within the contemplation of the statute, and in the other seeking a judgment to hold that they were not entitled to vote. I accordingly concur in the judgment that the plaintiffs were not entitled to an injunction on the ground on which it was granted.