# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

BOARD OF SUPERVISORS OF THE COUNTY OF HENRICO V. THE CITY OF RICHMOND.

March 22, 1934.

Present, All the Justices.

The opinion states the case.

*H. M. Ratcliffe, W. W. Beverly* and *Scott, Lloyd & Scott,* for the plaintiff in error.

*James E. Cannon,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This is an action, by notice of motion, by the city of Richmond against the board of supervisors of the county of Henrico for the sum of $6,505.60 alleged to be due to the plaintiff by the defendant on account of charges for certain sewer connections made with the sewer system of the city and certain annual charges for the use of the city's sewer system, by those residents of the county of Henrico making such connections and enjoying such annual use of the city's system.

The defendant demurred to the said notice of motion and interposed a special plea thereto, and filed its answer. The effect of all of these pleadings was a denial of the liability of the defendant.

Certain ordinances of the city, sections of the Richmond City Code of 1924, a deed from the Westhampton Improvement Corporation to the defendant, certain annexation proceedings and court orders with reference thereto, and an agreement between the city of Richmond and the said board of supervisors, with reference to water to be supplied by the city to the inhabitants of what is known as Sanitary District No. 1 of Henrico county, were introduced and received in evidence. There was also in evidence the water rates charged by the city to the users in said sanitary district and comparisons thereof with the rates charged by the city to its own resident users. The testimony of certain witnesses was also in evidence.

The hearing, or trial, was had before the circuit court of Henrico county, the offices of a jury having been dispensed with by agreement of the parties litigant. The court overruled the demurrer, rejected the special plea and rendered judgment for the plaintiff in the full amount of the sum sued for, with interest on certain portions of the principal sum from the dates designated in the court's order.

The two basal ordinances relied upon by the plaintiff are those of August 16, 1924, and May 14, 1926, which are as follows:

"AN ORDINANCE

"(Approved August 16, 1924)

"To permit the Westhampton Improvement Corporation to connect its sewer with the sewer of the city of Richmond, when constructed, at a point where the corporation line of the city of Richmond crosses Franklin street, on certain conditions.

"Be it ordained by the council of the city of Richmond:

"1. That the Westhampton Improvement Corporation, be and it is hereby granted the privilege of connecting its sewer with the sewer of the city of Richmond, when constructed, at a point where the corporation line of the city of Richmond crosses Franklin street, which point is located in Franklin street at a distance of approximately one hundred and fifty feet (150') west of the west line of Commonwealth avenue, upon such terms and conditions as to the construction, maintenance and repair of such connection as may be prescribed by the director of public works, and upon the further condition that all of the costs and expenses thereof shall be borne by the said Westhampton Improvement Corporation, or its assignees; and also on the further condition that the Westhampton Improvement Corporation, or its assignees, shall pay to the city of Richmond a sum equal to five dollars ($5.00) for each and every individual connection that is made to the said sewer of the Westhampton Improvement Corporation; and also on the further condition that the said Westhampton Improvement Corporation, and its assignees, shall indemnify and save harmless the city of Richmond against all loss, damage, or injury to any person or property by reason of the construction, maintenance, use or repair of said connection.

"2. The city of Richmond reserves the right at any time to amend or repeal this ordinance.

"3. This ordinance shall be in force from its passage."

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

"An Ordinance

"(Approved May 14, 1926)

"To prescribe the rate to be charged nonresidents for the use of city sewers.

"Be it ordained by the council of the city of Richmond:

"1. That the rate to be charged nonresidents of the city of Richmond for the use of city sewers shall be five dollars ($5.00) for each connection, to be paid at the time permit for such connection is issued by the director of public works, said connection charge to cover the use of the sewer system of the city of Richmond from the time when made until the first day of February ensuing and thereafter such person so making such connection shall pay to the city of Richmond an annual charge of five dollars ($5.00) for the use of such sewer, to be assessed and charged as of February 1st of each year and to be charged and collected in the same manner as other rentals for the use of city sewers; provided that in every case, however, in event of the annexation of the territory in which such nonresident resides against whom such charge is made, the charge shall hereafter be at the same rate and on the same basis as the charge for the use of other sewers located within the corporate limits of the city of Richmond.

"2. That all ordinances or parts of ordinances in conflict herewith be and the same are hereby repealed.

"3. The city of Richmond reserves the right at any time to amend or repeal this ordinance.

"4 This ordinance shall be in force from its passage."

It will be observed that the first ordinance quoted relates to the Westhampton Improvement Corporation. The right was given to this corporation to connect its sewerage system, when constructed, with that of the city of Richmond at a point where the corporation line of the city crosses Franklin street upon certain conditions, one of which was that the corporation, or its assignees,

should pay to the city a sum equal to $5.00 for each and every individual connection that should be made to the sewer of the Westhampton Improvement Corporation.

Likewise it will be seen that the provisions of the ordinance of May 14, 1926, imposed upon nonresidents of the city of Richmond an annual charge of $5.00 for the use of the Richmond city sewers, for each connection, and further, that this charge was to be assessed each year and collected in the same manner as other rentals for the use of the city sewers.

The effect of this ordinance appears to be amendatory of the first ordinance quoted. The one provided simply for the connection charge, the other for the annual use charge, which was the same to all nonresidents, the Westhampton Improvement Corporation, or its assignees, being in that class.

By another ordinance of June 17, 1929, the ordinance of May 14, 1926, was amended in respect to the $5.00 use charge to the extent of making its payment similar to that of personal city taxes, including interest and a penalty, for failure to pay the charge within a specified period.

Section 171 of chapter 10, and section 3 of chapter 12, of the Richmond City Code of 1924, provide for the interest charges and penalties required to be paid on personal property taxes which are delinquent, and these provisions are in accord with the plaintiff's claim and the judgment of the court so far as they affect the sum sued for.

By an act of the General Assembly of Virginia, approved April 11, 1927 [Acts of Assembly 1917 (Ex. Sess.), ch. 14, pp. 20-22], the area covered by the Westhampton Improvement Corporation was made a sanitary district, known as Henrico Sanitary District No. 1. The board of supervisors of Henrico county, by this act, was constituted the governing body of this district and, among others, it was given the power to construct, maintain and operate water supply, sewerage, etc., systems, to acquire the same

by purchase, lease, and otherwise, to contract with any corporation or municipality, etc., to construct, establish and operate, etc., such systems, to require owners of property to connect with such systems, to fix the rates of charge for the use of such systems and to negotiate and contract with any corporation or municipality, etc., with regard to the connection of any such system or systems with any other system or systems then in operation or to be established in the future for the use and benefit of the public in such sanitary district.

By deed dated June 23, 1927, the Westhampton Improvement Corporation conveyed to the board of supervisors of Henrico county its sewer line and system, for the use of the public in Henrico Sanitary District No. 1.

The third clause of the deed is as follows:

"3rd. The Westhampton Improvement Corporation assigns to the party of the second part all the privileges granted to it by an ardinance of the city of Richmond approved August 16, 1924, an ordinance approved May 15, 1925, and an ordinance approved May 14, 1926."

This recital appears in the deed: "For authority for the execution of this deed see certified copy of resolution of the stockholders and board of directors of the Westhampton Improvement Corporation attached hereto and made a part hereof."

Embodied in the resolution referred to is a receipt for the cash payment to the Westhampton Improvement Corporation for its sewerage system, constituting a part of the sewerage system of the said sanitary district, which recites that the system is to be conveyed to the board of supervisors pursuant to the aforesaid act of the General Assembly, and the last clause is in the following language:

"And upon the payment of the balance of said purchase money the president and secretary of this company are hereby authorized and directed to execute, acknowledge and deliver for and on behalf of this company a deed conveying the said sewerage system /to the board of

supervisors of Henrico county according to the provisions of said receipt, and at the same time to assign and transfer to the said board all the right, title, and interest of this company vested in it by certain ordinances and contracts between it and the city of Richmond and all the rights of this company in and to any connecting sewer systems."

It will be noted that the last mentioned ordinance, that of May 14, 1926, referred to in the third clause of the deed, and heretofore quoted, provided for the annual use charge of $5.00 for each connection.

Upon the structure built by the written evidence, above referred to, together with certain evidence in the form of the testimony of witnesses, the plaintiff bases its case.

The defendant moved the court to set aside the judgment and enter judgment for itself on the following grounds:

1. Because the judgment of the court is contrary to the law and the evidence.

2. Because it is excessive.

3. Because it is without evidence to sustain it.

To sustain its position as to the first ground it relies, first, upon the alleged legal effect of an ordinance of the city of Richmond of November 14, 1913, and orders of the circuit court of Henrico county in a proceeding instituted to effect the purposes of the ordinance, which were the annexation to the city of Richmond of certain portions of the counties of Henrico and Chesterfield.

It stressed the provisions of the ordinance which stated that it was highly expedient and essential that the sewerage and drainage of the James river watershed adjacent to the city should constitute one comprehensive system to the end of saving loss and waste when the inevitable consolidation of the outlying territories with the city of Richmond occurred, and particularly the section which provided that the counties named should have the right to drain any water or sewerage into the natural water-

ways embraced in the annexed territory. In this last mentioned section the following appears:

"And, in case any such natural waterway shall be converted into an enclosed or covered sewer or drain by the said city and its use is necessary for such drainage or sewerage by the said counties, or either of them, the terms and conditions of such user shall be agreed upon by the said city and the said county, or counties." * * *

The clauses of the orders of the court effecting the annexation, urged by the defendant, which we deem it necessary to advert to, are those which provide for the right of the counties referred to to turn any water or sewerage into the natural waterways which are included in the annexed territory and to extend into and through such territory water, sewerage and gas mains so soon as population and conditions demanded the same, and the clause tying together the act of annexation with the terms and conditions recited in the ordinance.

The onus of this line of defense, in epitome, is that by this ordinance and the orders of the court, in the proceeding to effectuate the annexation, the counties were given the right to use all natural waterways for sewerage purposes, and that being true, there could be no obligation upon the counties to pay the city for a right that they already had. The city meets this contention by urging that none of the natural drainage of the sanitary district is into Bacon Quarter branch; that a small portion of it drains directly into James river, while the major portion drains into the watershed of the Chickahominy river. It will be noted that the Richmond city sewerage connection at Franklin street discharges into Bacon Quarter branch, thence into Shockoe creek and thence into James river.

The evidence seems to sustain the city's position on this point.

Mr. James Bolton, chief of the bureau of surveys and designs, department of public works of the city of Richmond testified as follows:

"Q. In what watershed are located the localities served by the Westhampton Improvement Corporation's sewer system?

"A. It is in two watersheds. The major portion of it is in the Chickahominy river watershed. There is a small portion of it in the James river watershed. That is indicated on this map; the red line you see meandering there is the divide between the watershed of James river and the watershed of the Chicahominy. I am speaking of the natural watersheds. You will notice that a small area naturally drains towards the James river, and occasional areas around the Cary street road drain towards the James river, the Cary street road being aprpoximately the backbone. There is an area which might be called the Country club area, between the Three Chopt road and the University which drains naturally' towards James river, but the main portion between the Cary street road, the Three Chopt road, Patterson avenue and Woodlawn avenue naturally drains towards the Chickahominy through its tributaries, Jones' branch, Jordan's branch, and a portion of it would naturally go into Horsepond branch. Those tributaries all go into or empty into what is known as Young's pond in Bryan park and thence to the Chickahominy river.

"Q. Does any portion of that territory drain naturally into Bacon Quarter branch?

"A. None of that portion would naturally drain towards Bacon Quarter branch."

Mr. R. Stuart Royer, supervising engineer for the Sanitary District No. 1 of Henrico county, a witness for the board of supervisors testified:

"Q. Is it a fact that none of the territory of Sanitary District No. 1 is tributary to Bacon Quarter branch?

"A. Yes."

The natural course of the drainage of an area is determined by the topography of the area. Water seeks its level. It does not flow uphill.

The connection of the sanitary district's drainage with

the sewerage system of the city is really, it seems to us, a diversion of the natural flow. This thought is strengthened by descriptive words found in the board of supervisors' petition, which are doubtless accurate. It gets from the natural drainage area of the district to the city connection by going "across a slight divide into the adjacent drainage area."

The framers of the ordinance of November 14, 1913, seemed to previse just such a situation as we have here, for in section 4, clause 9, is embodied this provision: "and, in case any such natural waterway shall be converted into an enclosed or covered sewer or drain by the said city and its use is necessary for such drainage or sewerage by the said counties, or either of them, the terms and conditions of such user shall be agreed upon by the said city and the said county, or counties." * * *

So that, if we should concede that the natural waterways refered to in the ordinance and court orders, relative thereto, embrace Bacon's Quarter branch and Shockoe creek, the clear implication, from the quoted clause, is, that after the city had converted such waterways into its covered drains or conduits, it was not contemplated that the county or counties should enjoy the benefits of the city's outlay in improvements of the character referred to without paying therefor.

Perhaps the large defense of the board of supervisors is its question of the validity of the several city ordinances. They are said to be invalid because they are given extra territorial force and effect and because they are without express charter authority and because they are unreasonable.

In Dillon on Municipal Corporations, vol. 1, sec. 237 (5th Ed.) it is said:

"It is a general and undisputed proposition of law that municipal corporations possess and can exercise the following powers and no others:

"First: Those granted in express words;

"Second: Those necessarily or fairly implied in or incident to the powers expressly granted;

"Third: Those essential to the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of the power is resolved by the courts against the corporation, and the power is denied." * * *

■ Section 19 of the charter of the city of Richmond authorizes the city council to enact suitable ordinances to secure and promote the general welfare of the inhabitants of the city, by them deemed proper "for the safety, health, peace, good order, comfort, convenience and morals of the community."

It would seem to be "not simply convenient, but indispensable" for a city to possess the power to contract for the disposition of the sewerage of a thickly settled community just on its borders to the end of the promotion of the health of the inhabitants within its corporate limits.

Neither of the ordinances is anything more than an offer of the city to enter into a contract for the use of its sewers. The ordinance of 1924 is an offer to the Westhampton Improvement Corporation to permit it to connect its sewers with the city sewers upon condition that it shall pay to the city $5.00 for each connection made. The ordinance of 1926 is an offer to individuals who are nonresidents of the city who wish to use the city sewers to do so upon the payment of $5.00 per year to the city.

When the Westhampton Improvement Corporation connected its sewers with those of the city, it accepted the offer contained in the ordinance and a binding contract was thereby effected between it and the city, the terms of which are to be found in the ordinance of 1924. When the individual water users of this area made use of the city sewer through their connection with it, they accepted the offer of the city as set forth in the ordinance of 1926; and binding contracts were effected between them, the terms of which are set forth in the ordinance.

Until the passage of the act of 1927 (Ex. Sess.) and the acquisition, in pursuance thereof, of the sewer system of the Westhampton Improvement Corporation by the board of supervisors of Henrico county, these contracts between the Westhampton corporation and the city of Richmond and between the individual water users of the area and the city of Richmond were valid. But after the passage of this act and the acquisition of this sewer system by the board of supervisors of Henrico county, that board had the exclusive right and power "to require owners or tenants of any property in said district to connect with said water or sewerage systems and to contract with said owners or tenants for connections to any of the aforesaid systems," and "to fix and prescribe the rates and charges for the use of any such system or systems and to provide for the collection of such charges."

The contracts referred to then became unenforcible by the city, but the board of supervisors was by the statute given the authority to contract with the city for such service.

The board had knowledge of these ordinances and thereby of the charges made by the city for such service for nonresidents; and the board of supervisors not having made an express contract with the city for payment for these services on some other basis, it became bound by an implied contract to pay for such services at the rates fixed by the ordinance.

It is in evidence that the board of supervisors of Henrico county charges its individual sewer users in Sanitary District No. 1 the annual sum of fifteen dollars and for each connection the sum of forty dollars. This is of some value in determining the question of the excessiveness of the city's charges and the reasonableness of the provisions of the ordinances relating thereto.

The evidence does not sustain the position of the board of supervisors as to these contentions.

For the reasons stated, we affirm the judgment of the trial court.

*Affirmed.*