# Richmond

## SOUTHERN RAILWAY COMPANY, A CORPORATION V. CITY OF RICHMOND.

April 8, 1940.

Record No. 2145.

Present, All the Justices.

310

The opinion states the case.

*Thomas B. Gay* and *Stephen H. Simes,* for the plaintiff in error.

*Horace H. Edwards* and *Henry R. Miller, Jr.,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The Southern Railway Company filed its petitions alleging that it had been illegally assessed with sewer taxes for the years 1934, 1935, 1936 and 1937 on three vacant unimproved lots owned by it in the city of Richmond. From an adverse judgment the landowner obtained this writ of error.

The decision of the case turns upon the meaning of the pertinent provisions of section 170 of the Virginia Constitution, which read: "No city or town or county * * * shall impose any tax or assessment upon abutting landowners for street or other public improvements, except * * * for either the construction, or for the use of sewers; and the same when imposed, shall not be in excess of the

peculiar benefits resulting therefrom to such abutting landowners."

Code, section 3067, is the general statute granting to municipalities the same power with the same limitation to make special assessments upon abutting landowners for the local improvements enumerated.

Under the constitutional provisions the General Assembly delegated to the city of Richmond the specific powers with the limitations thereon found in the Constitution. This delegation of power is found in section 19-i of the city charter (Acts 1926, ch. 318) and reads as follows: "The City Council may likewise construct sewers, culverts, or drains under the streets, alleys or other public places in the city and may compel the use thereof, and may cause to be assessed upon the real estate benefited thereby the expense of such construction, to the extent of the peculiar benefits resulting therefrom to such abutting landowners. Or *they may, in lieu of such assessment,* assess and collect *compensation for the use of such sewers, culverts or drains,* and compel the payment of such compensation." (Italics supplied.)

The language of the constitutional mandate, as well as the language of the specific grant of power to the city in its charter, clearly limits the right of the city to make the special assessment in one of two ways; that is, the assessment may be imposed for the *construction* of the sewer, or the assessment may be imposed for the *use* of the sewer after construction. Regardless of the method chosen, the amount of the assessment must not exceed the value of the peculiar benefits resulting to abutting landowners. The pertinent language used is so clear and unambiguous that it needs no construction. Only one meaning is conveyed.

The city council, the legislative body of the city of Richmond, attempted to impose the special assessment under that provision of the charter which authorized it, "in lieu of" assessment for construction, to "assess and collect compensation for the use of such sewers." The pertinent provisions of the ordinance are: "Hereafter, in every case *in*

*which (no) assessment has been heretofore made to pay for the construction of a sewer,* under the ordinances in force in regard to such assessment, the owners of lots which, according to the plan of the City, adjoin by the front, rear or side, a street or alley in which there is a sewer owned by the City, * * *, *shall annually pay to the City as compensation for the privilege of using such sewer, a sum equal to ten cents per front foot, respectively, of such lot, whether such sewer be actually used or not;* which annual payment may be commuted at any time by the payment to the Treasurer of a sum equal to one dollar and fifty cents for each front foot, respectively, of such lot, or any sub-division thereof, as to which such commutation is paid, and any such lot upon which the said sewer tax is so commuted shall thereafter have perpetual right of drainage into a city sewer without further payment therefor; * * * ." (Italics supplied.)

This ordinance, instead of imposing the special assessments for "the use of sewers," imposed them for the "privilege of using" the sewers, "whether such sewers be actually used or not."

The dominant question presented is whether, under the provisions of section 170 of the Constitution, Code, section 3067, and the charter provisions quoted, the city council had the right to substitute "privilege of using" for "use of sewers," in authorizing the levy.

Municipalities have no inherent power to levy assessments for local improvements. It is, therefore, necessary to the validity of their action that municipalities exercise their power in strict accordance with the authority conferred. "The reasonable presumption is held to be, that the State has granted in clear and unmistakable terms all it has intended to grant at all; and whatsoever authority the municipal officers assume to exercise, they must be able to show the warrant for in the words of the grant. There is no inherent power in the municipalities to levy taxes; they can tax only as the State in its wisdom has thought proper to permit, and if the State has erred in the direction

of strictness, the legislature alone can correct the evil." *Green* v. *Ward,* 82 Va. 324. See *Violett* v. *City Council of Alexandria,* 92 Va. 561, 23 S. E. 909, 53 Am. St. Rep. 825, 31 L. R. A. 382; 25 R. C. L. 88; 44 C. J. 492-499.

The assessment, in order to be valid, must be imposed *either* for the construction of sewers *or* for the use of sewers.

The city concedes that the assessments imposed in this instance are not assessments for the payment of the cost of construction of sewers. It contends that the language "for the use of sewers," in the Constitution, authorizes it under a legislative grant to impose the tax for the "privilege of using;" that is, the term "for the use of sewers" is equivalent to "availability for use." In support of this contention the city relies upon Debates of Constitutional Convention, Vol. II, page 2860. It seems to us that the debates on this section of the Constitution, found on pages 2859 and 2860,* as well as the language of the Constitution itself, clearly show a studied effort to limit the power of municipalities to impose a special assessment for public improvements, and to authorize the special assessment for sewer purposes to be exercised in one of the two ways stated.

---

*The following are excerpts from the Debates of Constitutional Convention:

"Mr. Fairfax: I wish to offer an amendment in line 18 after the word 'construction,' to add 'or use,' so that it will read 'construction or use of sewers.'

"Mr. Hamilton: Before that is put, Mr. President, I wish to say that I do not think people ought to be required as abutting property owners to pay something for the construction of the sewer and subsequently for its use.

"Mr. Meredith: The idea is that some cities charge for the construction, and they allow you to pay for it immediately, and then there is no further burden on you. Others allow you to pay so much a year for the use of it, and if you choose to redeem it at any time you may do so, and you get rid of the burden.

"Mr. Hamilton: I suggest that some words be added there which will go to show that if you pay for the construction, you shall not, in addition, pay for the use. If you say 'either for the construction or otherwise for the use,' that would answer."

The amendment was adopted.

If the framers of the Constitution were seeking to authorize an assessment for the "privilege of using," irrespective of actual use, the provision as it stood—"for construction of sewers * * * not in excess of the peculiar benefits resulting therefrom"—was adequate and the proposed amendment would have been merely redundant. It seems clear that the members of the convention who sponsored the amendment intended to propose an alternative and a distinctly different basis of assessment which would not have been necessary if by "use" were not meant "use in fact" or "actual use."

The municipalities must elect to charge abutting landowners either for the construction of sewers or for the use of sewers. While the municipality was given the right to select one of the two methods, the special assessment imposed could not in either event "be in excess of the peculiar benefits resulting therefrom to such abutting landowners."

█ Judge Holt, speaking for the court in *Quesinberry* v. *Hull*, 159 Va. 270, 165 S. E. 382, and quoting from Black on Interpretation of Laws, page 25, said: "It is a general rule that the words of a Constitution are to be understood in the sense in which they are *popularly employed*, unless the context or the very nature of the subject indicates otherwise."

█ Webster's International Dictionary gives ten definitions of the word "use" as a noun. The first, primary and popular definition is "act of employing anything or state of being employed; application; employment; as, the use of a pen; his machines are in use." The primary definition given in the Standard Dictionary is "the act of using, employment, as of means or material for a purpose, application to an end, particularly a good or useful end, as use for steam and navigation." "Privilege of use" is a right to use. "Use" is the exercise of the privilege.

The right to use, "the privilege of using," a sewer may enhance the value of an abutting vacant lot. This enhanced value accrues, if at all, immediately upon construction of the sewer. The municipality may levy the special

assessment to the full amount of the enhanced value. If, in lieu of this method of imposing the tax, the city elects to levy a special assessment "for use of sewers," the amount of the assessment must be in proportion to the value of the use. In the one case, the value of the peculiar benefits must be measured by the difference between the value of the lot with and without available sewers. In the other case, the limit of the special assessment is the value of the peculiar benefits accruing to the abutting landowner from actual use of the sewer, as distinguished from the privilege of using. If the abutting landowner is not charged for construction, he may be charged only in the event that he uses the sewer.

The rule of constitutional and statutory construction, the popular meaning of the term "for the use of sewers," and the context of this language in the Constitution, compel the conclusion that the language means "use in fact" or "actual use" as contradistinguished from "privilege of using" or "available for use."

The city contends that the tax should be upheld because an ordinance similar to the one now under consideration has been in force for a period of thirty-seven years and has remained unchallenged until the filing of the petitions in this case.

It appears that the city has not consistently made the levy of the special assessments under the ordinances. The three lots in question were not assessed with these sewer taxes until 1934, 1932 and 1931, respectively. All taxes were paid without protest until 1934 when the validity of the assessments on all of these lots was challenged by the landowner. Even if the city had consistently levied these taxes and the owner had paid them, the owner would not be estopped to raise the constitutionality of the levy as to current taxes.

"While a court should hesitate to declare a statute unconstitutional until clearly satisfied of its invalidity, and where it has been on the statute books for many years the hesitation should be all the greater, yet, if such an act is

plainly in conflict with the organic law of the state, old age cannot give it life, and, when the issue of its constitutionality is properly raised, it must be declared void. We have never ruled to the contrary." *Kucker* v. *Sunlight Oil & Gasoline Co.*, 230 Pa. 528, 79 A. 747, 749, Ann. Cas. 1912A, 503. See *Commonwealth* v. *Hazen*, 207 Pa. 52, 56 A. 263; *In re Orkney St.*, 194 Pa. 425, 45 A. 314, 48 L. R. A. 274; *People* v. *Kempner*, 154 App. Div. 674, 139 N. Y. S. 440 (affirmed 208 N. Y. 16, 101 N. E. 794, 46 L. R. A. (N. S.) 970, Ann. Cas. 1914D, 169) ; *Lane* v. *Wilson*, 305 U. S. 591, 59 S. Ct. 249, 83 L. Ed. 374.

The city further contends that for practical reasons the ordinance should be upheld, that a meaning such as actual use would compel the city to ascertain the facts in each case every time an assessment is made, and that "a vacant house with many connections to the sewer but with its water turned off, although available for instant use, could not be made the basis for the assessment of a sewer tax. A building may be vacant today and in full usage tomorrow. Such changing conditions would make it impossible for the city to be sure its assessments as of January 1st of each year upon all of the lots in the City of Richmond would be sustained."

"Actual use" or "use in fact" need not be so stringent as to require a continuous drainage where a connection has been made. The city ascertains when its gas and water are in actual use and the meters measuring the quantity of water and gas used are read every month. It has no trouble in levying taxes for water and gas. It should have even less trouble in imposing an assessment for the use of sewers, as the assessment need not be measured, even if such measurement were practicable, by actual consumption. "Use" does not necessarily mean continuous use.

Mr. Chief Justice Hughes, in *Santa Cruz Fruit Packing Co.* v. *National Labor Relations Board*, 303 U. S. 453, 467, 58 S. Ct. 656, 660, 82 L. Ed. 954, said: "What is reasonably clear in a particular application is not to be overborne

by the simple and familiar dialectic of suggesting doubtful and extreme cases."

While this case was pending in the trial court, the city, evidently conscious of the weakness of its argument under the old charter provision, obtained from the General Assembly of 1938, ch. 339, an amendment to section 19-i of its charter. This amendment expressly authorized the city to levy a special assessment upon abutting landowners for the privilege of using sewers "whether the same be actually used or not." This amendment further attempted to ratify, validate and confirm all prior assessments made by the city.

Under this amendment the city contends that it is expressly authorized to levy the tax upon the privilege of using, and that the General Assembly has approved and ratified the previous action of the city in imposing the special assessments.

The General Assembly can neither authorize nor ratify an assessment made in conflict with section 170 of the Constitution or which is made in conflict with existing statutes. " * * * the curative act can only be effectual to do that which the Legislature would have been competent to provide for and require to be done by a law prospective in its operation." *Whitlock* v. *Hawkins,* 105 Va. 242, 252, 53 S. E. 401, 404.

"A town, proceeding to assess taxes, is exercising powers of the state to it delegated. It may proceed only according to statute directions, and within limits by statute prescribed. And it may not avail itself of a curative statute in contravention of constitutional rights." *Otisfield* v. *Scribner,* 129 Me. 311, 151 A. 670, 671. See *People* v. *Illinois Cent. R. Co.,* 310 Ill. 212, 141 N. E. 822; *Wall-Hay-Wall Lumber Co.* v. *Mathews,* 211 Ala. 426, 100 So. 824; *Southern Ry.* v. *Cherokee County,* 177 N. C. 86, 97 S. E. 758; *Montgomery* v. *Town of Branford,* 107 Conn. 697, 142 A. 574; *Charlotte Harbor & N. R. Co.* v. *Welles,* 260 U. S. 8, 9, 43 S. Ct. 3, 67 L. Ed. 100; and *People* v. *Bell,* 309 Ill. 387, 141 N. E. 187.

The inhibition upon the municipality to impose these special assessments is by virtue of a constitutional mandate, not by virtue of a statute. The inhibition is as binding upon the General Assembly as upon the council of the city of Richmond. Counsel for the city concedes that if the language of the Constitution means "for the use of sewers" and not the "privilege of using" sewers, the attempted curative act of the General Assembly is futile. This concession, which is recognition of a fundamental principle of the application of a constitutional limitation, in view of previous statements in the opinion, concludes the case.

For the reasons stated, the judgment of the trial court is reversed and the case remanded with direction to enter final judgment in accordance with the views expressed in this opinion.

*Reversed and remanded.*