### W. M. Bott v. Hampton Roads Sanitation District Commission, Etc.

March 13, 1950.

Record No. 3615.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Edward S. Ferebee* and *Tazewell Taylor*, for the plaintiff in error.

*Kellam & Kellam* and *Ashburn, Agelasto & Sellers*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

W. M. Bott filed a motion for a declaratory judgment under Code, 1942 (Michie), section 6140a, *et seq.*, to construe a portion of chapter 65A of the Code of 1942 (Michie), known as the Sanitation Districts Law of 1938, and which is embraced in the 1948 cumulative supplement where the particular sections are shown as 1560iii7 and 1560iii19. The defendant to the motion was Hampton Roads Sanitation District Commission, and it filed its answer, including a cross-claim for sewer charges of $682.73, with interest and costs, due up to the time of this motion. The sole issue made by the pleadings was, What meaning did the General Assembly intend by the language of the statutes enacted?

A comprehensive plan was carried into the Sanitation Districts Law of 1938, the purpose of which was to eliminate pollution and contamination from the tidal waters of the Commonwealth caused by emptying therein raw sewage and

industrial wastes. The Act provides its own definitions of the various terms, and defines sewage as water-carried wastes created in and carried "away from residences, hotels, schools, hospitals, industrial establishments, commercial establishments, or any other private or public building * * *." Under the plan each district shall have a commission with broad powers which are defined in the Act. The purpose and duties of the commission "shall be the relief of the tidal waters of the district from pollution and the consequent improvement of conditions affecting the public health and the natural oyster beds, rocks and shoals." (Sec. 6.) The commission is empowered to take over and operate sewerage systems and construct, maintain and operate trunk and intercepting lines, outlets, pipelines, pumping stations, &c. And finally, the commission is "authorized and directed, when in the judgment of the commission, its sewage disposal system or part thereof will permit, to collect from any and all public sewage systems within the district, all sewage, and treat and dispose of the same in such manner as to promote the purposes of the commission." (Sec. 6c.)

The case of the petitioner is within narrow limits and turns entirely upon the meaning of the language in section 1560iii7, the pertinent portion of which is as follows:

"(a) Every commission is hereby authorized and empowered to charge and collect fees, rents, or other charges for the use and services of the sewage disposal system. Such fees, rents and charges may be charged to and collected from any person contracting for the same or from the owner or lessee or tenant, or some or all of them, who uses or occupies any real estate which directly or indirectly is or has been connected with the sewage disposal system, or from or on which originates or has originated sewage or industrial wastes, or either, which directly or indirectly have entered or will enter the sewage disposal system, and the owner or lessee or tenant of any such real estate shall pay such fees, rents and charges to the commission at the time when, and place where, such fees, rents and charges are due and payable.

"(b) Such fees, rents and charges being in the nature of use or service charges, shall as nearly as the commission shall deem practicable and equitable, be uniform throughout the district for the same type, class and amount of use or service of the sewage disposal system, and may be based or computed either on the consumption of water on or in connection with the real estate, making due allowance for commercial use of water, or on the number and kind of water outlets on or in connection with the real estate or on the number and kind of plumbing or sewage fixtures or facilities on or in connection with the real estate, or on the number or average number of persons residing or working on or otherwise connected or identified with the real estate to or on any other factors determining the type, class and amount of use or service of the sewage disposal system, or on any combination of such factors."

Then follow provisions for the enforcement of the collection of the charges for the services.

Section 1560iii19 reads as follows:

"The commission shall have the right to recover the amount of any fees, rents or other charges charged by the commission to the owner or lessee or tenant or contracting party, as set forth in section seven (sec. 1560iii7) of this Act, for the use and services of the sewage disposal system by or in connection with such real estate and of the interest which may accrue thereon, by any action, suit or proceeding permitted by law or in equity."

The petitioner owns four apartment houses in the city of Norfolk which are connected with the sewerage system of the city and through it to the disposal plant which has been established and is being operated by the commission under the terms of the Act. The living quarters of the apartment houses are occupied by tenants. The halls, basements, entrances, and other public spaces are under the direct control of the petitioner. In these spaces are lavatories, sinks, and commodes which are not leased to tenants. The water

supply necessary for the apartments is purchased by the petitioner from the water distribution system of the city.

The commission has established a system of charges under the authority of the Act which are computed "on the consumption of water on or in connection with real estate from which sewage and waste is discharged into its disposal facilities." This method was decided upon by the commission as reasonable, and it is not challenged here.

Provision is made that those who may feel themselves aggrieved by the charges as being exorbitant may appeal to the State Corporation Commission for redress. (Sec. 7f.)

The petitioner paid the charges for the sewage disposal of these apartment buildings under protest but later became dissatisfied and filed the motion in this case in which he contends that he is not liable for the charges for these services because he does not *use* the buildings, in that he does not dwell in or reside in any family dwelling unit in any one of the buildings.

The trial court construed the Act, holding the petitioner liable for the sewer charges, and entered judgment against him for the full amount of the cross-claim.

Is the petitioner, under the facts in this case, chargeable for the sewer services provided by the commission? We think he is.

Section 1560iii7 authorizes the commission to charge for the use of the sewage system and to make the charges against "any person contracting for same, or from the owner, lessee or tenant, or some or all of them, *who uses or occupies any real estate* which directly or indirectly is or has been connected with the sewage disposal system." (Italics added.)

Counsel for petitioner say that the trial court has fallen into error in its interpretation of the word "use" as found in the Act. They say that the petitioner is not using or occupying any of the apartments, that is, he is not actually living or residing therein, and for that reason he is not chargeable for the sewer services. On the other hand, counsel for the commission avers that it is not necessary that

the owner actually occupy one or more of the apartments as a dwelling in order to render him liable, but that if he uses the services in connection with his real estate that is sufficient to render him liable.

There is no doubt that the commission is and has been supplying sewer services to all of the apartments, and that the petitioner has the real beneficial use of them. The operation of these apartments is a business of considerable size. The petitioner collects the rents and makes his profits. He knew of the Sanitation Districts Law of 1938 because he was charged with knowledge thereof even if he had no actual knowledge. One of the provisions is that the owner of real estate may be charged with the "use" of the sewage disposal system. An owner who is discharging into a system sewage from four apartment buildings is certainly using the system.

Water consumption is expressly made one of the means whereby the proper charges for this service can be ascertained. Under the plan no one is compelled to connect with the disposal system. He has the option of providing his own disposal facilities if he chooses, but when he connects with the disposal system he must pay his portion of the cost of it. The petitioner cannot discharge the sewage from four apartment buildings into the system, with knowledge of the Sanitation Districts Law, accepting the services and benefits of it, and at the same time claim that he has not contracted "for the same." The law under such circumstances will imply a contract on his part. The Act does not require the contract to be in writing or to be express. It is sufficient if it is an implied contract. *Board of Supervisors* v. *Richmond*, 162 Va. 14, 173 S. E. 356.

We do not think a proper construction of the language "owner or lessee or tenant * * * who uses or occupies any real estate * * *" means that the owner must reside in or on the real estate before he can be charged for the sewer services. The words "uses or occupies" do not appear elsewhere in the Act. They are omitted in the latter part of

section 7(a) where these words are used, "and the owner or lessee or tenant of any such real estate shall pay such fees * * *." It does not state that the owner must use or occupy the real estate. Again the same words are omitted in the latter part of section 7(d), where the identical language just noted is again used, but "uses or occupies" is again left out. The owner, lessee, tenant or some or all of them, of any real estate which is directly or indirectly connected with the disposal system discharging sewage therein is liable to pay the fees and charges fixed by the commission, measured by water used.

The words "uses or occupies" are given a limited meaning and are taken by counsel for the petitioner as the sole test of when one in contemplation of the Act is using or occupying any real estate so he may be charged for sewer services to the exclusion of other pertinent and important language of the Act. They make those words predominant and seek to subordinate the other language.

It is elementary that the intention of the General Assembly must be sought and applied when we consider the Act, and we must consider and give effect to the specific language used. In our quest for the intention we must consider the object of the legislation, the purpose to be accomplished, and so construe it as to promote the end for which it was enacted.

Judge Burks, in *Harris* v. *Commonwealth*, 142 Va. 620, at p. 625, 128 S. E. 578, said: "When we know the object of a statute and are called upon to construe a phrase or a sentence which, standing alone, may be susceptible of different interpretations, we know of no safer rule than to take the statute by its four corners and critically examine it as a whole to ascertain the legislative intent, as manifested by its different provisions. If, upon such an examination, an interpretation can be made, consistent with the language used, which will carry into effect the object sought to be accomplished by the statute, that interpretation should be adopted, in preference to one which would be equally consistent with

the language used, standing alone, but which would defeat, or tend to defeat, the manifest intent of the legislature."

We think the language of section 7(a), "every commission is hereby authorized and empowered to charge and collect fees, rents, or other charges for the use and services of the sewage disposal system" is important. The petitioner is using the services of the system. Section 7 states to whom the charges are to be made. They are to be made to a person contracting for the same, among others. Here, as we have already concluded, the petitioner, by connecting with the system and continuing using it for his own benefit and business purposes, is in effect "contracting for the same." In addition, the petitioner, being the owner whose real estate is connected with the system, is using his real estate within the meaning of the Act.

Under section 19 the commission is given the authority to collect for the services and they are charged to the owner, lessee, tenant or contracting party, "as set forth in section 7." Here again it is not necessary that an owner must actually use or occupy, in the sense of physical occupancy, the real estate before the commission is allowed to collect from him.

Much respectable authority has been presented to sustain petitioner's construction of the word "use", but we have been cited no authority which is sufficiently in point on the facts to be conclusive. In *Billings* v. *United States*, 232 U. S. 261, 34 S. Ct. 421, 58 L. ed. 596, Ann. Cas. 1914D, 289; the court was considering a tax upon the use of every foreign-built yacht owned by any citizen of the United States. It was held that this was a tax on actual use as distinguished from ownership. In the case at bar we are not considering a tax, but only service charges for sewers. This kind of a charge has been held to be not a tax and is not an enforced contribution imposed for governmental purposes. It is founded upon contract alone. *Westbrook* v. *Falls Church*, 185 Va. 577, 39 S. E. (2d) 277, 167 A. L. R. 1027.

In *Southern Ry. Co.* v. *Richmond*, 175 Va. 308, 8 S. E. (2d) 271, 127 A. L. R. 1368, section 170 of the Virginia Constitution was considered. There it is provided that "no city or town or county * * * shall impose any tax or assessment upon abutting landowners for street or other public improvements except * * * for either the construction or for the use of sewers; and the same when imposed shall not be in excess of the peculiar benefits resulting therefrom to such abutting landowners." An ordinance .of the city imposed an annual assessment for sewer tax upon property abutting the street, whether such sewer was actually used or not. In this case the property was a vacant lot and had never been connected with the sewer system. This court invalidated the ordinance because it violated section 170 of the Virginia Constitution which prohibits a city from imposing a tax upon abutting property for improvements except for the *construction or use of sewers.* The taxing ordinance ran counter to the Constitution. Here we have no tax. Section 170 of the Virginia Constitution is not involved, and the petitioner does not have to use the disposal system unless he so chooses.

In *McCoy* v. *Sistersville*, 120 W. Va. 471, 199 S. E. 260, an ordinance provided for a special assessment against real property for fire protection, street lighting, sanitary sewers, garbage collection, and street cleaning. Objection was made that the assessment was against the property and not against the users thereof, and therefore, in effect, was an additional tax on property in violation of the constitutional tax limitation. The ordinance was legislatively enacted. As to the sewers, the assessment was based on the number of connections, and as to the lighting, the ordinance was upheld, but invalidated as to the other assessments because it imposed an added tax burden on some and not on others.

We do not think the decision is controlling of the case at bar. Here we are not dealing with special assessments or taxes of any kind, but only with service charges.

Finally, the petitioner contends that the construction of

the Act adopted by the court operates to deny him constitutional rights under both the Federal and Virginia Constitutions, being violative of the 14th Amendment of the Constitution of the United States, and of section 11 of the Constitution of Virginia. This point was not insisted upon in oral argument by able counsel at the bar of this court, but is pressed in the petition and reply brief. The argument is that inasmuch as the Act does not provide for a lien on the property for the sewer services rendered by the commission, in the absence of a contract between the owner and the commission to pay for them, it would deprive him of his constitutional rights and compel him to pay for the services which are not used by him but used by his tenants. The petitioner says there being no lien which, according to the authorities, is a prerequisite to the collection from the owner of charges incurred by the tenants, the apartments or the property itself is immune from liability.

This argument is not supported by the facts in this case. It is true there is no lien, but, as we have already concluded, there is a contract between the owner and the commission which obligates him to pay for the services. In addition, we have already decided that the owner is using the premises for his own private business purposes under the provisions of the Act, and on that basis he is also liable for the charges. It is conceded by counsel for the petitioner in his reply brief that the petitioner is not compelled under the Act to use the services in the event he actually occupies the premises.

These facts, in our opinion, are conclusive of the constitutional questions and renders a discussion of *Etheredge* v. *Norfolk,* 148 Va. 795, 139 S. E. 508, 55 A. L. R. 781, unnecessary.

The principles applied in *Carson* v. *Brockton Sewerage Comm.,* 182 U. S. 398, 21 S. Ct. 860, 45 L. ed. 1151, are in point here. There an ordinance provided an annual special assessment against property for the use of a sewer connected with it, and the charges were based on the amount of water

consumed. In reply to the contention that property was being taken without due process of law, the court held that the owner could use the sewer or not, as he chose, but if he used it he would have to pay the rental fixed by the ordinance; if he made no use of it he paid nothing. The holding was placed squarely on the proposition that the charges were based upon contract and there was no deprivation of rights under the Constitution.

We have not felt it necessary to enter into a discussion of all of the cases brought to our attention and relied upon by counsel for petitioner. They are not helpful to the construction of the particular language of the Act with which we have concerned ourselves.

We are of opinion that the judgment should be affirmed.

*Affirmed.*