# Richmond

## City of Richmond v. H. T. Eubank.

January 19, 1942.

Record No. 2458.

Present, All the Justices.

The opinion states the case.

*Horace H. Edwards* and *Henry R. Miller, Jr.*, for the plaintiff in error.

*Williams, Mullen & Hazelgrove*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

H. T. Eubank filed his petition in the trial court, praying for a refund of the amount of sewer taxes paid on certain lots in the city of Richmond for the years 1938 and 1939, and for a correction of the assessment of sewer taxes made for the year 1940. The city filed no reply to the petition, but appeared and admitted that the petitioner was entitled to recover the sewer taxes paid for the years 1939 and 1940. It contended, however, that he was barred from the recovery of sewer taxes paid for the year 1938 by the one year period of limitation. The trial court overruled the city's contention and entered judgment requiring the city to refund petitioner the amount of sewer taxes paid for the year 1938, as well as the amount of sewer taxes for the other years admitted to be

illegally collected. From that judgment the city sought and obtained this writ of error.

The petition for the refund of the taxes in question was based on the decision in *Southern R. Co.* v. *City of Richmond*, 175 Va. 308, 8 S. E. (2d) 271, 127 A. L. R. 1368, declaring the ordinance imposing the sewer tax void.

Section 414 of the Tax Code permits all taxpayers to invoke the jurisdiction of a court for the purpose of correcting illegal assessments, and to compel the refund of the amount of taxes paid under such assessments to any locality. For this purpose local taxes are divided into three classes: (1) tax on real estate; (2) tax on personal property; and, (3), local license tax. The time given a taxpayer to file his petition for the correction of erroneous assessments and the recovery of the amount of taxes illegally paid depends upon whether the illegal tax is within one or the other of the three classes named. If the tax is illegally imposed upon real estate, the petition must be filed within two years from the 31st day of December of the year in which the assessment is made. The period of limitation for a correction and recovery involving either of the other two classes is one year.

It is conceded that the tax is not imposed upon personal property. It must fall within the class denoted "tax on real estate" or the class denoted "local license tax." The city contends that it is a license tax, not in the sense of a business license, such as is imposed on a merchant, pawnbroker, etc., but in the sense that it is a tax upon the privilege of use of the sewer. The examples cited are automobile licenses, rent charged for obstructing a street by electric signs, fruit stands and the like. It is further contended that the tax is not a charge upon property, but upon owners, householders and others who use or have the privilege of using the sewer.

This contention is not supported either by the ordinary and usual meaning of the language used in the ordinance, the statute and the pertinent constitutional provision, or by the manner in which the city has heretofore exercised the right and privilege conferred.

We turn first to the void ordinance under which the tax was imposed. It, in part, provides: "The owners of lots which * * * adjoin by the front, rear or side a street or alley in which there is a sewer owned by the city * * *." This language attempts to impose the tax upon one class of taxpayers only—those who own lots which *adjoin* the street or alley upon which has been constructed the sewer.

The amount of the tax is measured by the foot. The exact language is: "Shall annually pay to the city as compensation * * * a sum equal to ten cents per front foot * * * of such lot."

Section 19-i of the city charter, under which this ordinance was purported to be enacted, provides: "The city council * * * *may cause to be assessed upon the real estate benefited thereby the expense of such construction* to the extent of the peculiar benefits resulting therefrom to such abutting land owners; or they may, in lieu of such assessment, assess and collect compensation for the use of such sewers * * * and compel the payment of such compensation."

The first clause in this paragraph of the charter expressly states that the tax is an assessment upon real estate. Whether the burden be a property tax or a license or privilege tax, it is a levy on the land. The last clause quoted purports to authorize the city to make the imposition of a tax for the use of sewers. The ordinance measures the amount of this burden by the length or width of the lot. Necessarily it is confined to abutting property owners, and the amount of the burden is the extent of the frontage.

The pertinent constitutional provision is: "No city * * * having the right under this section to impose taxes or assessments for local improvements upon *abutting property owners* shall impose any tax or assessment upon *abutting land owners* for streets or other public improvements except for making and improving the walkways upon then existing streets and improving and paving then existing alleys and for either construction or use of sewers, and the same, when imposed, shall not be in excess of the peculiar benefits resulting therefrom to such abutting land owners."

The words "abutting property owners" or "abutting land owners" are used three times in the one sentence. Whether the tax be imposed for the construction of sewers or as compensation for the use of sewers, the maximum amount which may be charged or taxed is measured by the value of the sewer to the abutting lots. The term, "the peculiar benefits," clearly means the enhanced value of each lot resulting from the construction of the sewer.

■ Judge Staples, in City of Norfolk v. Ellis, 26 Gratt. (67 Va.) 224, 227, referring to assessments made by municipal authorities upon the owners of real estate for local improvements, said: "These assessments are not founded upon any idea of revenue, but upon the theory of benefits conferred by such improvements upon the adjacent lots. It is regarded as a system of equivalents. It imposes the tax according to the maxim, that he who receives the benefit ought to bear the burthen; and it aims to exact from the party assessed no more than his just share of that burthen according to an equitable rule of apportionment." See Sands v. City of Richmond, 31 Gratt. (72 Va.) 571, 31 Am. Rep. 742; Violett v. City of Alexandria, 92 Va. 561, 23 S. E. 909, 53 Am. St. Rep. 825, 31 L. R. A. 382; Hicks v. Bristol, 102 Va. 861, 47 S. E. 1001.

Prior to the adoption of the present Virginia Constitution, the city of Roanoke, pursuant to its charter, passed an ordinance assessing a tax against the owners of abutting property for the proportionate cost of paving Campbell avenue. Both the legislative grant in the charter and the ordinance made the proportionate cost of such paving a lien upon the property and a personal debt of the owners of the property.

This court, in Asberry v. City of Roanoke, 91 Va. 562, 22 S. E. 360, 42 L. R. A. 636, held: "The levy is made on the supposition that that estate, having received the benefits of a public improvement, ought to relieve the public from the expense of making them. In such a case, if the owner can have his land taken from him for a supposed benefit to the land, which, if the land is sold for the tax, it is conclusively shown he has not received, and he then be held liable for

the deficiency in the assessment, the injustice—not to say the tyranny—is manifest.

" * * * the charter of Roanoke, in so far as it authorizes the creation of a personal debt or liability upon an abutting lot owner for assessments levied, to meet costs of street improvements, is in conflict with Section 1, Article X, of the Constitution of Virginia, and inoperative."

The city of Lynchburg passed an ordinance which, among other things, provided: "The owners of all property abutting upon streets along which water mains are laid shall pay one-fourth of one per centum of the assessed value, provided the said property is not supplied with water and subject to water rates therefor." Richmond, Alleghany Railway Company owned certain lots in the city of Lynchburg. These lots were not supplied with water and hence the company paid no water rent for these lots. The city assessed the railway company with the amount of tax as set forth in the foregoing ordinance. This tax the company paid under protest. Then it instituted an action against the city to recover the amount of taxes so paid. Judgment was rendered for the city.

On review, Judge Lewis, speaking for the court, said: "The Legislature has, therefore, in the present instance, wisely empowered the common council to make special assessments on real estate abutting on the streets along which the mains are laid. The burden is thus placed on the property, the value of which is enhanced by the expenditures that are made, which is a far more equitable apportionment than if placed on the entire property within the city, and for the same reason the burden may be placed on real estate alone, which, unlike personalty, being immovable in its nature, is more peculiarly and permanently benefited." *R. & A. R. R. Co.* v. *City of Lynchburg*, 81 Va. 473.

This decision was rendered in February, 1886, some sixteen years before the present Constitution was adopted. The language imposing a tax in the ordinance of the city of Lynchburg, and the language of the constitutional provision permitting the political subdivisions of the State to impose an

improvement tax, are strikingly similar. This court construed this language to mean a special assessment tax on real estate.

Chapter 11, sec. 7, of the Richmond city code provides that "* * * charges assessed against property owners annually for the privilege of connecting with and using sewers * * * shall be entered and charged against each owner on suitable books * * * to be collected and accounted for in the manner prescribed for the collection of *other city taxes;* * * * charged * * *, and an annual rental charge for the use of sewers * * * shall be a *lien upon real estate* * * * and shall be *added to the tax bill against said real estate.*" (Italics supplied.)

Pursuant to these directions the bill for the sewer tax was included in the bill designated "City Taxes on Real Estate for Year 1938." In separate lines were shown (1) the assessed valuation of the property, (2) the rate of tax per hundred dollars, and (3) the number of feet fronting on a street or alley along which a sewer had been constructed. The total amount of the tax was ascertained by multiplying the assessed value by the rate of tax, and the number of front feet by ten cents. See footnote on page 78*.

In view of the previous decisions of this court, the language used in the pertinent constitutional provision, the act of the General Assembly, and the city ordinance and the interpretation placed thereon by the city authorities, the conclusion is inevitable that the sewer tax in question falls within the class designated in the Tax Code, sec. 414, as "Tax on Real Estate."

The city further contends that, even if the sewer tax be regarded as a tax upon real estate, the provisions of chapter 261 of the Acts of 1936 apply, and that a petition for the recovery of the amount of real estate tax illegally collected must be filed within one year.

Section 1 of this chapter purports to authorize the councils of the cities containing more than 175,000 inhabitants, in lieu of the general law on the subject, to create a board whose duties shall be to make an "annual assessment" of real estate within the corporate limits to determine the market value for the purpose of local taxation. Section 2 transfers

to this board all duties formerly exercised by the commissioner of revenue.

Section 3 provides: "Any person or any such city aggrieved by any such assessment may apply for relief to the hustings or corporation court of such city within one year from the 31st day of December of the year in which such assessment is made, and the procedure in such cases shall be in the manner prescribed by section 414 of the Tax Code of Virginia."

Section 414 of the Tax Code is long and involved. The provisions of three sections of the Code of 1919 (secs. 2249, 2389 and 2390), with four amendments thereto, originally clear and understandable, are thrown together in one sec-

---

| *C I T Y   T A X 1938 Rate $2.20 Per $100.00 | THE CITY OF RICHMOND, VA. ROOM 107 CITY HALL     No. 34185 City Taxes on Real Estate for Year 1938 |
|---|---|

| 2 | EUBANK H T | FOLIO |
|---|---|---|

MAKE CHECKS PAYABLE TO CITY OF RICHMOND

| HOUSE NO. | Lot or Block | No. Feet | LOCATION |
|---|---|---|---|
|  | 27 A | 50' | N. BELLVU NEWPT & BROOK |

| Assessed Valuation | Sewer Tax | Area and Gas Tank Tax | SPECIAL ASSESSMENT 1937 Bill Nos.          Amount |
|---|---|---|---|
| 1 250 | 5 00 |  | 32 50 |

| All or one-half will be accepted on or before June 30, 1938, without penalty, and last one-half on or before December 31, 1938, without penalty. Compare description of property. If in error, kindly return at once. | TOTAL TAX PAID | 1ST HALF TAX PAID | 2ND HALF TAX PAID |
|---|---|---|---|
|  | 32 50 | 16 25 | 16 25 |
|  | Pen. |  |  |
|  | Adv. |  |  |
|  | Int. |  |  |
|  | Total |  |  |

tion, in such manner as to create doubt as to the meaning of the language used. Prior to the late amendments to the Constitution and the acts of segregation made in pursuance thereof, the Constitution and the general law required real estate to be appraised for the purpose of taxation every five years. Later, the general law permitted re-assessments to be made every four years, with other changes not pertinent. The applicable provision of the act of 1936, as heretofore stated, permits the city of Richmond, through the new board created, to determine annually the market value of real estate.

On the question under consideration the trial judge, the Honorable Richard T. Wilson, of Petersburg, in deciding the case, said: "The second point is whether or not the Enabling Act bars recovery in view of the fact that the Enabling Act says that relief can be had if a petition is filed within one year from December 31st of the year in which the assessment is made.

"If a proper study is made of Section 414 of the Tax Code it will be observed that the word 'assessment' used in that section has two separate and distinct meanings. The court is of the opinion that it would be wise to have this section clarified. In certain places the word 'assessment' refers to the tax the individual has to pay. In other parts of it it refers to the value placed upon the property; and the section must be construed in view of those two different meanings of the word 'assessment.' For instance, the first sentence of this section is as follows:

" 'Any person assessed with county or city levies or other local taxes on real estate aggrieved by any such assessment may, unless otherwise provided by law, within two years from the 31st day of December of the year in which such assessment is made, and any person assessed with local levies on personal property or a local license tax aggrieved thereby may within one year from the 31st day of December of the year in which such assessment is made, apply for relief to the Circuit Court of the county or any city court of record of the city wherein such assessment was made.'

"Where the word 'assessment' is used in this sentence it can apply only to one thing, that is, the amount of the tax (the money) the individual is supposed to pay. The next sentence in that same paragraph is as follows:

" 'In such proceeding the burden of proof shall be upon the taxpayer to show the property in question is assessed at more than the fair market value or that such assessment is not uniform in its application, but it shall not be necessary for the taxpayer to show that intentional, systematic and willful discrimination has been made.'

"In that sentence the word 'assessment' can only apply to the value of the property, and has nothing to do with the amount of the tax assessed upon the value of the property. Also in another place this section says this:

" 'If the court be satisfied from the evidence that the assessment is erroneous and that the erroneous assessment was not caused by the willful failure or refusal of the applicant to furnish a list of his property to the tax assessing authority as the law requires, or that the applicant is erroneously charged with a local license tax and that the erroneous assessment was not caused by the willful failure or refusal of the applicant to furnish the tax assessing authority with the necessary information as required by law, in either case the court may order that the assessment be corrected.'

"There again it, the word 'assessment,' refers to the money the taxpayer has to pay and not to the value of the thing, because local license taxes are not placed on the value of something tangible. There are in the city of Richmond, I presume, like in all other cities, certain specified license taxes of specified amounts to carry on certain specified businesses, irrespective of whether the business is a large business or a small one. So I repeat that the word 'assessment' there refers to money paid or which should be paid.

"The next sentence, however, reads this way:

" 'If in the opinion of the court the assessment exceeds the proper amount, the court may reduce the assessment to what in its opinion, based on the evidence, is the fair market value of the property involved, and shall order the appli-

cant to be exonerated from the payment of so much as is erroneously charged if not already paid, and, if paid, that it be refunded to him. If in the opinion of the court the assessment be less than the proper amount, the court shall order the assessment increased to what in its opinion is the fair market value of the property involved and shall order that the applicant pay the proper tax.'

"There it, the word 'assessment,' can refer only to the value of the property. I could go through the balance of that section and point out other instances as to the meaning of the word 'assessment,' but I do not feel that it is necessary. It would show that the word 'assessment' sometimes refers to the actual tax, the amount the person should pay, and in other instances it refers to the value of the property on which the levy is made.

"Now, in what I have referred to as the Enabling Act, that is, the act in the Acts of the Assembly for 1936, page 440, the word 'assessment' is used, and we find this: That the city of Richmond 'may elect one or more persons to assess such real estate for taxation * * *.' Then we find this 'All such real estate shall be assessed at its fair market value, and taxes for each of such years shall be extended by the assessor or assessors on the basis of the last assessment made prior to such year, subject to such change as may be lawfully made.'

"Paragraph 3 is as follows:

" 'Any person or any such city aggrieved by any such assessment may apply for relief to the hustings or corporation court of such city within one year from the 31st day of December in the year in which such assessment is made, and the procedure in such cases shall be in the manner prescribed by Section 414 of the Tax Code of Virginia.'

"The city of Richmond passed an ordinance which was approved on August 5th, 1937, and certain observations relative to the ordinance may be beneficial.

"The title to the ordinance in part is as follows:

" 'To provide for the assessment of real estate in the City

of Richmond in the year 1938 and each year thereafter; to provide for the equalization of such assessment * * *.'

"In this ordinance it is stated that those persons who will be named as assessors 'shall, as soon as practicable after the first day of September, 1937, proceed to organize and prepare to assess real estate in the City of Richmond in the year 1938.' Again, it says that these assessors 'shall, upon examination, ascertain and assess the fair market value thereof.' Again, it says: 'In making the assessment herein provided for, the last reassessment made shall be the basis of such assessment * * *.' Then again it states that these assessors 'shall certify on oath that all real estate assessed by them has been assessed at fair market value.'

"The ordinance further states that there shall be three assessors, and it states that: 'at least one of whom shall have engaged in the real estate business in the City of Richmond and at least one of whom shall have engaged in the business of constructing and erecting buildings in the city of Richmond.'

"I do not think that it is open to argument that the ordinance of the City of Richmond and the Enabling Act show conclusively that the assessment referred to in the Enabling Act and in the ordinance is an assessment of the value of the property and has nothing to do with the tax paid on the property, which tax, of course, is obtained by multiplying the assessed value of the property by the rate of taxation.

"In this case of the sewer taxes there is no question of discretion involved. The tax is laid by the Council at so much per lineal foot. The assessment referred to in the Enabling Act and in the ordinance has to do with the value of property.

"In *Breckenbridge* v. *County School Board*, 146 Va. 1 [135 S. E. 693], Judge Burks, speaking for the court, on page 5 said:

" 'There is a marked difference between making a levy and the assessment of property for the purpose of taxation. A levy is merely fixing the subject and the amount

at which property is to be taxed. An assessment consists in listing the property and putting a value thereon to which the rate fixed by the levy is to be applied. It is *quasi* judicial. The statute does not contravene the provision of Section 63 of the Constitution. *County of Sussex* v. *Jarratt*, 129 Va. 672, 106 S. E. 384.'

"Also, in *McGinnis* v. *Nelson County*, 146 Va. 170 [135 S. E. 696], Judge Campbell, speaking for the court, at page 173 said:

" ' "Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subject and rate of taxation." Hilliard on Taxation, page 290. "Assessment is *quasi* judicial, and consists in making a list of the taxpayer's property and fixing its valuation, or appraisement." Id. 29.'

"The assessment referred to in the Enabling Act and in the ordinance is the assessment of value, wherein the assessors exercise their discretion, and is *quasi* judicial. Consequently I am of the opinion that the statute of limitations of one year as provided in the Enabling Act has nothing to do with this case.

"I have had no trouble whatsoever in arriving at the conclusion, first, that this tax is not a license tax but a tax on land. It is interesting to note that nothing in the record here shows that the city of Richmond ever considered this a license tax until the case of the Southern Railway Company was decided. The evidence, in so far as it bears on this subject, shows conclusively that the city considered this sewer tax just like any other real estate tax. It is made a lien on real estate; it is a burden on real estate; and while it is a tax, in my opinion, for a privilege, nevertheless it is a tax on real estate, notwithstanding the fact it is for a privilege.

"Neither have I had any trouble in arriving at the conclusion that the Enabling Act did not apply to this case."

The amount in controversy is $109.32, evidenced by a money judgment pronounced against the city of Richmond. During the oral argument the question of the jurisdiction of this court was raised from the bench. Later, and at the request

of the court, the city filed a brief on the question of jurisdiction. In this brief the city contends: "The fundamental question before this court is one which relates to the character of the tax. The decision of the question as to the character of the tax necessarily involves a consideration of and a construction of the city ordinances which levy the tax."

Code, sec. 6336, provides that: "Any person who thinks himself aggrieved by any judgment \* \* \* in a controversy concerning \* \* \* the right of the State, county, or municipal corporation to levy tolls or taxes, or *involving the construction of any statute, ordinance,* or county proceeding imposing taxes, \* \* \* may present a petition \* \* \* for a writ of error \* \* \*."

A statute or a municipal ordinance imposing a tax upon the people is a matter of public interest, vitally affecting every person within the orbit of the legislative enactment. Taxes are imposed and collected annually so long as the enactment remains in force. The construction of such a statutory law should be uniform and should serve to guide the administrative officers whose duty it is to collect the tax, as well as the property owners upon whom the burden is imposed.

The foregoing are evidently the dominating reasons which impelled the adoption of Code, sec. 6336, conferring upon this court jurisdiction to review any judgment involving the right of the State or any of its subdivisions to levy a tax, or involving the construction of any statute or ordinance imposing a tax, regardless of the amount in controversy. The ordinance imposing the sewer tax being unconstitutional, "it is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." *Campbell* v. *Bryant*, 104 Va. 509, 516, 52 S. E. 638.

This being true, there is no ordinance in force, within the purview of Code, sec. 6336, to be construed. All sums collected under the ordinance are sums illegally collected and held by the city. This the city concedes. Its sole defense

is the statute of limitations. The real matter in controversy is that for which · the action is brought and judgment is rendered, and not that which may or may not come in question—"in other words, * * * the sole test of jurisdiction is the amount which the defendant may ̄ pay and thereby discharge himself, and if that sum be less than the minimum jurisdiction of the court, the appeal or writ of error should be dismissed." *Elliott* v. *Ashby,* 104 Va. 716, 718, 52 S. E. 383.

In *Cohen* v. *Walford,* 111 Va. 812, 70 S. E. 850, it is said: "We are of opinion that neither the right to levy a tax, nor the constitutionality of a law is drawn in question in this case. The controversy is merely pecuniary, and the amount of the tax involved being less than $300, the court is without jurisdiction." See *City of Staunton* v. *Stout's Ex'rs,* 86 Va. 321, 10 S. E. 5; *Prince George County* v. *Atlantic, M. & O. R. Co.,* 87 Va. 283, 12 S. E. 667; *Schermerhorn's Ex'x* v. *Commonwealth,* 107 Va. 707, 60 S. E. 65; *Town of Colonial Beach* v. *De Atley,* 154 Va. 451, 153 S. E. 734. See also *Unemployment Compensation Comm. of Va.* v. *Louise B. Harvey, post,* page 202, 18 S. E. (2d) 390, opinion published at the January, 1942, session of this court.

The city contends that the trial court misconstrued the statute of limitations, that it should have applied the one-year instead of the two-year limitation. Even if this contention is correct, the alleged error does not give this court jurisdiction since the statute construed did not impose a tax and since the constitutionality of said statute is not involved. See sec. 88 of the Constitution, as amended; and Virginia Code, sec. 6336.

*Writ of error dismissed.*