# Richmond

## St. Andrew's Association v. City of Richmond.

June 11, 1962.

Record No. 5406.

Present, All the Justices.

*Ralph H. Ferrell, Jr.* and *Waller H. Horsley* (*John B. Duval; Hunton, Williams, Gay, Powell & Gibson; Duval, Duval & Miller,* on brief), for the appellant.

*James A. Eichner, Assistant City Attorney (J. E. Drinard, City Attorney*, on brief), for the appellee.

BUCHANAN, J., delivered the opinion of the court.

 St. Andrew's Association, the appellant, is a nonstock, non-profit corporation chartered by the General Assembly in 1900 (Acts 1899-1900, p. 702), for the purpose of doing benevolent and charitable work by means of a library, schools and similar activities. In 1907 it became the owner of the property known as 224 South Cherry street in the city of Richmond, which it conveyed to the city in 1927 and which the city conveyed back to it in 1947.

On November 6, 1957, the assessor of real estate for the city assessed the property for city real estate taxes for the first time, the assessment being then for omitted taxes for the years 1954-55-56-57 and subsequently for the years 1958 and 1959.

On December 31, 1959, the appellant filed its application under § 58-1145 of the Code for relief from said assessments on the ground that the property was exempt from taxation under the Constitution and laws of the Commonwealth. In response the city filed a plea of the statute of limitations, asserting that the time limit for filing the application was not two years, as provided by § 58-1145, but one year, as provided by chapter 261 of the 1936 Acts, continued in effect by § 58-769(1) of the Code of 1950, as amended in 1938 and 1942.

By the decree appealed from the trial court sustained the city's limitation plea and denied relief from the assessments for 1954-55-56-57, but held that the property was exempt from real estate taxation under the Constitution and laws and accordingly canceled the assessments for 1958-59-60-61 and ordered them stricken from the land books as erroneous assessments. The appellant appeals from the part of the decree which sustained the city's plea and the city appeals from the part that held the property to be exempt.

The first question is whether the two-year limitation under § 58-1145 or the one-year limitation under the 1936 act is controlling.

Section 58-1145[1] provides that any person "assessed with county or

---

[1] "§ 58-1145. Application to court to correct erroneous assessments of local levies generally.—Any person assessed with county or city levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specially provided by law, within two years from the thirty-first day of December of the year in which any such assessment is made, and any person assessed with local levies on personal property or a local license tax, aggrieved thereby, may, within one year from the thirty-first day of December of the year in which such assessment is

city levies or other local taxes on real estate, aggrieved by any such assessment, may, unless otherwise specially provided by law," within two years from December 31 of the year in which the assessment is made, apply to the court for relief.

Chapter 261, Acts 1936, p. 440,[2] which the city adopted by ordinance enacted in 1937, permitted (par. 1) the city to provide for the annual assessment of real estate and to elect one or more persons to assess such real estate for taxation. It provided (par. 2) that all the duties of the commissioner of revenue with respect to the assessment of real estate and making up the land books should be trans-

---

made, apply for relief to the circuit court of the county or any city court of record of the city wherein such assessment was made. In such proceeding the burden of proof shall be upon the taxpayer to show that the property in question is assessed at more than its fair market value or that the assessment is not uniform in its application, but it shall not be necessary for the taxpayer to show that intentional, systematic and willful discrimination has been made."

[2] "Chap. 261.——* * *

"Be it enacted by the General Assembly of Virginia:

"1. That in cities containing more than one hundred and seventy-five thousand inhabitants, according to the last preceding United States census, the council or other governing body of such cities, may in lieu of the method now prescribed by law, provide for the annual assessment of real estate for local taxation, and to that end, may elect one or more persons to assess such real estate for taxation, and the council or other governing body in such cities may prescribe the duties of such person or persons and fix his or their compensation, which shall be paid out of the local treasury; and such council or other governing body may likewise provide for such clerical assistants and other expenses that may be properly incident thereto.

"2. All duties now devolved upon the commissioner of revenue with respect to the assessment of real estate and making up the land books in such cities, shall be transferred to and devolved upon the assessor or assessors to be appointed pursuant to this act. All such real estate shall be assessed at its fair market value, and taxes for each year on such real estate shall be extended by such assessor or assessors on the basis of the last assessment made prior to such year, subject to such changes as may have been lawfully made.

"3. Any person or any such city aggrieved by any such assessment, may apply for relief to the hustings or corporation courts of such city, within one year from the thirty-first day of December of the year in which such assessment is made, and the procedure in such cases shall be in the manner prescribed by section four hundred and fourteen of the Tax Code of Virginia."

* * *

5. The act approved March 10, 1932, providing for assessment and equalization of assessment in cities containing more than one hundred and seventy thousand inhabitants, and all provisions of law relating to the equalization of real estate assessments applicable in cities containing more than one hundred and seventy-five thousand inhabitants are repealed, "and all other acts or parts of acts in conflict with this act, are to the extent of such conflict, hereby repealed."

The amendments of 1938 and 1942 added §§ 2a and 2b relating to forms and records used in making assessments of real estate, the form and contents of land books, and reports to the assessor of transfers and conveyances.

ferred to the assessor, and all such real estate should be assessed at its fair market value and taxes extended by the assessor; and (par. 3) any person, or the city, aggrieved by any such assessment may apply to the court for relief within one year from December 31 of the year the assessment was made, and the proceeding in such case shall be as prescribed by § 414 of the Tax Code [now §§ 58-1145 to 58-1151].

The appellant contends that its application was for relief from an erroneous levy, to which the two-year period prescribed by § 58-1145 is applicable; that "assessment" in chapter 261, to which the one-year limitation applies, means fixing the fair market value of the property, of which it does not complain; and "assessment" in § 58-1145, to which the two-year limitation applies, means the amount of money that has to be paid, the tax itself, of which it does complain. It was so held, it says, in the case of *City of Richmond* v. *Eubank,* 179 Va. 70, 18 S. E. 2d 397 (Jan. 19, 1942).

In that case Eubank, on June 4, 1940, filed his petition to correct an erroneous assessment of sewer tax (held to be a tax on real estate) for the years 1938-39-40. The city admitted that he was entitled to recover the amounts paid for 1939 and 1940, but contended that he was barred as to 1938 by the one-year limitation prescribed by chapter 261 of the 1936 Acts. This court, in an opinion written by the late Chief Justice Hudgins, quoted paragraph 3 of the act containing the one-year limitation and providing that procedure shall be as prescribed by § 414 of the Tax Code (containing the same language as now appears in § 58-1145), and went on to say that § 414 was long and involved and written in such a way as to create doubt as to the meaning of the language used; that formerly it was required that real estate be appraised for taxation every five years; that later the general law permitted reassessments to be made every four years; but the 1936 act permitted the city, through the new board created, "to determine annually the market value of real estate."

"On the question under consideration," continued the opinion, "the trial judge, the Honorable Richard T. Wilson, of Petersburg, in deciding the case, said:" The opinion of Judge Wilson on whether the one-year limitation of the 1936 act was applicable is then set forth *in extenso.*

That opinion observed that the word "assessment" as used in § 414 of the Tax Code had two separate and distinct meanings, one being the tax the individual has to pay and the other the value placed upon the property. The word "assessment" in the first sentence of § 414 (which is in the identical language of § 58-1145), he said, "can apply

only to one thing, that is, the amount of the tax (the money) the individual is supposed to pay". But in the second sentence [of the act and of § 58-1145] "the word 'assessment' can only apply to the value of the property". The opinion then quotes from the 1937 ordinance of the city, referred to above, and expresses the view that it is not open to argument that the city ordinance and the Enabling Act [Acts 1936, ch. 261] conclusively show that the assessment referred to in the act and in the ordinance " 'is an assessment of the value of the property and has nothing to do with the tax paid on the property, * *' ".

" 'The assessment referred to in the Enabling Act and in the ordinance is the assessment of value, wherein the assessors exercise their discretion, and is *quasi judicial*. Consequently I am of the opinion that the statute of limitations of one year as provided in the Enabling Act has nothing to do with this case.' " 179 Va. at 83, 18 S. E. 2d at 403.

The opinion quotes from *Breckenbridge* v. *County School Board*, 146 Va. 1, 135 S. E. 693, and *McGinnis* v. *Nelson County*, 146 Va. 170, 135 S. E. 696, holding that "levy" and "assessment" have very different meanings; that a levy declares the subject and rate of taxation, while an assessment consists in making a list of the taxpayer's property and fixing its valuation or appraisement.

The writ of error in the *Eubank* case was dismissed because the amount involved was not enough to give this court jurisdiction. The opinion ended with this paragraph:

"The city contends that the trial court misconstrued the statute of limitations, that it should have applied the one-year instead of the two-year limitation. Even if this contention is correct, the alleged error does not give this court jurisdiction since the statute construed did not impose a tax and since the constitutionality of said statute is not involved."

It is true, as the city argues, that this court did not adopt Judge Wilson's opinion as its own or in express terms approve it, but approval of it is to be implied. It would hardly have been published in the opinion if it had been intended to disapprove it. Moreover, it has been cited as authority on points involved in at least four succeeding cases: *City of Charlottesville* v. *Marks' Shows*, 179 Va. 321, 331, 18 S. E. 2d 890, 895; *Woolfolk* v. *Driver*, 186 Va. 174, 180, 41 S. E. 2d 463, 466; *Todd* v. *County of Elizabeth City*, 191 Va. 52, 57, 60 S. E. 2d 23, 25; *C. & P. Telephone Co.* v. *City of Newport News*, 194 Va. 409, 414, 73 S.E. 2d 394, 397.

Also, none of the amendments to the 1936 act has attempted to change the construction of the act as made in the *Eubank* case that the one-year limitation applied only to the annual fixing of the fair market value of the property. Chapter 422 of the 1950 Acts amended the 1936 act to provide for a board to review any assessment made by the assessor appointed under paragraph 1 of the act and provided that any person aggrieved by any assessment made by the assessor so appointed, or by the board of review, might apply for relief within one year. The provisions of this amendment, as well as of the amendment made by Acts 1958, ch. 339, with respect to the qualifications of the members of the board of review, indicate that the legislative concern was with the fixing of the fair market value and not with changing the holding in the *Eubank* case.

The brief for Eubank in that case pointed out that the assessors appointed under the 1936 act have two sets of duties: (1) to assess the fair market value; and (2) to extend the taxes. Since reappraisal is to be made annually, it was argued, it is important to get each year's appraisal settled before the next one is made; so a complaint that the land has been wrongfully valued must be made in one year, while a complaint that the land is not subject to taxes at all may be made in two years.

As said by this court in the opinion (179 Va. at 84, 18 S. E. 2d at 404), the construction of the statutory law imposing a tax should be uniform "and should serve to guide the administrative officers whose duty it is to collect the tax, as well as the property owners upon whom the burden is imposed."

We therefore adhere to the ruling in the *Eubank* case and hold that the application of the appellant was filed in time. See 21 C.J.S., Courts, §§ 190 c. and 190 d.

We deal next with the cross-error assigned by the city to the ruling of the court that the property in question is exempt from taxation by the city.

The record includes a stipulation of facts, as well as testimony heard *ore tenus* by the court. From the stipulation it appears:

The appellant erected the Grace Arents Free Library building on the land in question with money received from Miss Arents, who later bequeathed to the appellant $100,000 to endow the continued operation of the library. Pursuant to her desire appellant offered the property and the endowment to the city on the condition that it remain in its then location and be continuously operated as a library. This offer was accepted and the property was conveyed and the

endowment transferred to the city in 1927. For economic reasons the city transferred the property back to the appellant, along with the endowment fund, in 1947. The books had then deteriorated and repairs to the building were needed which the income from the endowment was not sufficient to supply.

The William Byrd Community House is a nonstock, nonprofit corporation, organized and conducted for educational and philanthropic purposes. As a result of negotiations begun in the fall of 1946, the appellant and the Community House entered into a written agreement on June 1, 1947, under which Community House moved into the library building on condition that it operate and maintain the library, taking care that the library be not merged with the other charitable works of the Community House.

From 1947 the library has been operated under the supervision of the appellant with the aid of the income from the endowment fund. The stipulation sets forth the space in the building devoted exclusively to the library, as well as the activities of Community House in the building, such as a craft shop, dental clinic, scout troops and similar activities for different age groups.

The evidence shows a definite relationship between the library and the activities of Community House in the building and the manner in which the use of the library has increased because of the activities of Community House and its work devoted to civic betterment.

The city argues that the library occupies less than 10% of the floor space of the building and that the property does not fall within the constitutional and statutory exemption from taxation as "property owned by public libraries, * * * not conducted for profit" and "primarily used for literary, scientific or educational purpose or purposes incidental thereto." Constitution of Va., § 183(d); Code § 58-12 (4).

The trial court found the facts to be that neither the library nor any of the activities of Community House in the building were conducted for revenue or profit; that in addition to the space used exclusively by the library there were other parts where its books were used in connection with the activities of Community House, plus the space in the hallways and that occupied by the heating facilities. The court held that the arrangement with Community House had but one objective in view, and that was the continued operation of the public library on the premises; that the conduct of a public library on the property was the purpose, the objective and the result of this

arrangement, and that Community House served as agent or manager for the Association in the operation of the public library.

The court had no difficulty, it said, in finding that the property was used primarily for literary or educational purposes or purposes incidental thereto, without profit; that it was not required that a public library owning the property must itself manage the library, but it might do so through others so long as it was used for the purposes specified in the Constitution and statute and without profit. The decree states:

"The Court finds as a fact, and hereby certifies, that during the entire period under consideration the Applicant qualifies as a public library and the property known as 224 South Cherry Street, Richmond, Virginia, owned by it and assessed for taxation, is used primarily for literary and educational purposes or purposes incidental thereto; and pursuant to the provisions of paragraph (d) of Section 183 of Constitution of Virginia and paragraph (4) of Section 58-12 of the Code of Virginia, 1950, as amended, such property is exempt from real estate taxes * *."

The finding is well supported by the evidence and accords with prior decisions of this court. *Commonwealth* v. *Lynchburg Y.M.C.A.*, 115 Va. 745, 80 S. E. 589; *Commonwealth* v. *Smallwood Mem'l Inst.*, 124 Va. 142, 97 S. E. 805; *Norfolk* v. *Nansemond Supervisors*, 168 Va. 606, 192 S. E. 588; *City of Richmond* v. *Hospital*, 202 Va. 86, 116 S. E. 2d 79; *Hospital Association* v. *Wise County*, 203 Va. 303, 124 S. E. 2d 216; *County of Hanover* v. *Trustees of Randolph-Macon College*, 203 Va. 613, 125 S. E. 2d 812 (decided today). It is accordingly affirmed.

For the reasons stated, that part of the decree appealed from which sustains the city's plea of the statute of limitations is reversed, and that part which holds the property in question to be exempt from real estate taxes is affirmed; and the cause is remanded to the court below with direction to enter a further decree canceling the taxes assessed by the city against said property for the years 1954-55-56-57 and relieving the appellant from the payment thereof.

*Reversed in part, affirmed
in part and remanded.*