# CIRCUIT COURT OF THE CITY OF RICHMOND

Cornerstone Realty
Income Trust, Inc.,
and Lexington Tower
Assocs.

v.

City of Richmond

March 29, 2000

Case No. LE-2548

BY JUDGE MELVIN R. HUGHES, JR.

In this case, property owners challenge an assessment of property tax by the City of Richmond. Presently before the court is plaintiffs' Motion for Summary Judgment. After hearing argument on the motion, the court rules as follows.

The court may enter summary judgment when the parties are at issue and no material fact is genuinely in dispute. Va. S. Ct. R. 3:18. In doing so, the court adopts the inferences from the facts which are most favorable to the nonmoving party. *See Buonocore v. Chesapeake & Potomac Tel. Co. of Va.,* 254 Va. 469, 472 (1997); *see also Carson v. LeBlanc,* 245 Va. 135, 139-40 (1993). Here, the court will rely on the written stipulations submitted by the parties and adopts the factual inferences most favorable to the City.

Plaintiffs are the former and current owners of the property at issue, located at 104 West Franklin Street, Richmond, Virginia. Lexington Tower Associates (LTA), a Virginia General Partnership, owned the property until June 25, 1996, when it sold the property to the current owner, Cornerstone Realty Income Trust, Inc., a Virginia corporation located in Richmond. LTA operated the property as an apartment building and apparently attempted to convert it into condominiums. The property consists of "197 separate

residential units," currently designated by the City as Tax Parcel No. W000-0126/013.

In early 1993, the City assessed the property as a single apartment building, valued at $3,700,000. Subsequently, on April 12, 1993, LTA filed a Declaration of Condominium for the property. In 1994, the City Assessor assessed the units on the property as separate parcels pursuant to the Declaration of Condominium, Tax Parcels W000-126/020 through W000-0126/217. LTA paid the tax in full for that year based on the assessment which set the property's 1994 fair market value at $3,700,000.

On February 15, 1995, the Condominium Declaration was terminated. The City, however, assessed the property as though it consisted of separate condominium units, as was done the prior year.

In 1996, LTA challenged the assessment for 1995. In an order dated January 15, 1998, the court found that the 1995 assessment correctly determined the property to be 197 individual units pursuant to the Declaration of Condominium.

Cornerstone purchased the property on June 25, 1996. By letter dated October 28, 1997, the City informed Cornerstone that it was "correcting" the assessment for 1994.[1] The change from apartment buildings to condominiums raised the 1994 value of the property from $3,700,000 to $7,592,000.

Enclosed with the letter was an Assessment Correction. The letter acknowledged Cornerstone was not the record owner of the land in 1994 but that the taxes created a lien on the land. LTA received a similar letter noting the revision.

Cornerstone instituted this proceeding by filing this petition on October 27, 1998. LTA was joined as a necessary party by order of the court dated October 12, 1999. Plaintiffs move for summary judgment on several grounds; however, the court finds that part of the motion asserting a plea of the statute of limitations is dispositive.

Plaintiffs argue that the City is precluded from the re-assessment due to a one-year statute of limitations established in Chapter 261 of the 1936 Acts of Assembly. They contend that the City's assessment in 1997 for tax year 1994 was executed after the applicable limitations period expired. In their

---

[1] Because the Stipulation does not mention the time of assessment and states, at page 2, paragraph 7, that the Board of Review of Real Estate Assessments for the City of Richmond affirmed the assessment on appeal by the property owner, the court infers that the assessment was done prior to the effective date of the termination of the Declaration of Condominium.

argument, plaintiffs cite *St. Andrew's Ass'n v. City of Richmond*, 203 Va. 630 (1962). For the reasons discussed hereafter, the court finds in plaintiffs' favor.

Chapter 261 of the 1936 Acts of Assembly, as amended, applies to cities with a population of 175,000 or more. *See* Va. Code § 58.1-3260 (1950). The parties agree that Richmond is such a city. Chapter 261 establishes a Board of Review of Real Estate Assessments and states in relevant part:

> Any person or any such city aggrieved by any assessment made by the assessor or assessors appointed pursuant to § 1 of this chapter or by the board of review may apply for relief to the corporation or hustings court of such city within one year from the thirty-first day of December of the year in which such assessment is made ....

Interpreting Chapter 261 in *St. Andrew's Ass'n*, 203 Va. 630, the Virginia Supreme Court said that the term "assessment" has two different meanings. The first, to which the one-year limitations period applies, is the act of setting the fair market value of the property, referred to by plaintiffs as the valuation of the property. *Id.* at 634-35. The second meaning is the act of extending the taxes. *See id.* The Court explained, "Since reappraisal is to be made annually ... it is important to get each year's appraisal settled before the next one is made; so a complaint that the land has been wrongfully valued must be made in one year ...." *Id.* at 635. Once the land is valued, however, the one-year limitation is irrelevant to a modification of the designation of the property for purposes of determining the rate at which the parcel is to be taxed.

Here, the property was valued in 1994 by the City's assessor at $3,700,000. The City assessed a tax for 1994, although the stipulations are not clear as to whether the tax designated the building as an apartment building or as separate parcels. When it reassessed the property in 1997, the City may have changed the designation of the property from an apartment building to a condominium for the 1994 tax year. The one-year limitations period in Chapter 261 does not apply to such a change.

As stated by the Virginia Supreme Court, the governmental policy promoted by the limitations period is certainty in the valuation of property before the next year's assessment takes place. When the City altered the 1994 assessment of the value of the property in 1997 to $7,592,000, the City violated this important policy. That the valuation which the City relies upon was done in 1995, within a year of 1994, does not change the result.

Furthermore, the City's use of the same value as noted in the 1995 tax year does not support the position that the City accurately assessed the

property's value in 1994. An important reason for the limitations period is to avoid such problems of proof. Therefore, the valuation came too late.

The City argues that Chapter 261 is not an exclusive remedy and that the chapter does not apply to an administrative correction pursuant to Va. Code § 58.1-3981, as amended. Subsection B of that section deals with corrections where the previous assessment was less than the proper amount and reads:

> If the assessment is less than the proper amount, the commissioner shall assess such applicant with the proper amount. If any assessment is erroneous because of a mere clerical error or calculation, the same may be corrected as herein provided and with or without petition from the taxpayer. If such error or calculation was made in work performed by others in connection with conducting general assessments, such mistake may be corrected by the commissioner of the revenue.

Additionally, the powers and duties of the City assessor are purely statutory unlike the constitutional grant of power to the Commonwealth to tax in article 10, § 1, of the Virginia Constitution. Under Dillon's Rule, the City only retains that power which is expressly granted by the General Assembly to the municipal corporation and includes "those [powers] necessarily or fairly implied therefrom, and those that are essential and indispensable." *See Board of Supervisors v. Countryside Invest. Co.*, 258 Va. 497, 503 (1999) (*quoting City of Richmond v. County Board*, 199 Va. 679, 684-85 (1958)).

Reading the two Acts consistently with each other, the court finds that the ability of the City's assessor to alter the assessment in § 58.1-3981 is limited by the language of Chapter 261. Thus, the assessor may "reassess" the property to the extent that the reassessment effects the designation of the property in order to determine the correct tax rate to be applied. However, the City's assessor is still bound by Chapter 261 and the policy evinced by it not to alter the value assigned to the property for a given year without first applying to the court within the limitations period described in Chapter 261.

That Chapter 261 says the City "may" apply to the court for review only shows that the City is not obligated to appeal at all. In any case, the use of the word "may" does not necessarily imply that the City has other authority to alter the assessment *sua sponte*.

Additionally, the City's reassessment in 1997 is not an administrative correction of a clerical error. Though "clerical error" has not been defined under the statute, the assignment of fair market value to the property seen in this case is too substantive a change from the original assessment to be deemed mere clerical error. Alteration of a clerical error is similar to a change

in a court's order entered *nunc pro tunc*. The appropriateness of such a change was described by the Court of Appeals recently:

> The purpose of a *nunc pro tunc* entry is to correct mistakes of the clerk or other court officials, or to settle defects or omissions in the record so as to make the record show what actually took place. It is not the function of such entry by a fiction to antedate the actual performance of an act which never occurred, to represent an event as occurring at a date prior to the time of the actual event, or to make the record show that which never existed.

*Hutchins v. Carrillo*, 27 Va. App. 595, 611 (1998) (*quoting Council v. Commonwealth*, 198 Va. 288, 292 (1956)) (internal quotes and alterations omitted).

Here, the City actually assessed the property's value in 1994 and considered that value in its assessment for that year. The City determined in 1997 that the value assigned to the property for the 1994 tax year was incorrect and altered its record to show what the City alleges should have been found by the assessor in 1994. The City does not allege that the $3,700,000 value assigned to the property was the result of a scrivener's error. Notwithstanding the issues surrounding the City's power to make such an alteration, the difference cannot be ascribed to correction of a mere clerical error.

The City also argues that the taxes at issue were omitted and, thus, were assessable pursuant to Va. Code § 58.1-3903. Relevant to the dispute at hand, that section states:

> *Omitted local taxes or levies.* — If the ... city or the tax-assessing officer of any town ascertains that any local tax has not been assessed for any tax year of the three preceding tax years or that the same has been assessed at less than the law required for any one or more of such years, or that the taxes for any cause have not been realized, the ... assessing officer shall list and assess the same with taxes at the rate or rates prescribed for that year, adding thereto penalty and interest at the rate provided under Sections 58.1-3916 and 58.1-3918.

The statute grants localities, like the City, the power to retroactively correct substantive errors in the assessment of tax on property. However, it, too, must be read consistent with the General Assembly's language and policy in Chapter 261. As explained above, reassessments of the fair market value of

a property are limited as compared with reassessments of the proper tax status or designation of the property. To construe these sections differently would render the distinction made in Chapter 261 meaningless and the policy promoted thereby frustrated. Therefore, the court rejects the City's argument that the 1997 reassessment was a proper exercise of authority by the locality.

In light of the foregoing, I ask Mr. Thorson to prepare and submit an order sustaining the Motion for Summary Judgment and entering judgment for the plaintiffs Cornerstone Realty Income Trust, Inc., and Lexington Tower Associates and against the City of Richmond.